**CHERYL D. UZAMERE**
**APPEARING PRO SE**
Cheryl D. Uzamere
Sole Proprietor
African Diasporal Enterprises
Uzamere Word Processing & More
1209 Loring Avenue
Apt. 6B
Brooklyn, NY 11208
Tel.: (929) 225-8837
Fax: (929) 225-8827
Cell: (332) 345-0002
E-mail #1: cheryl.uzamere@africandiasporalenterprises.net
E-mail #2: cheryl.uzamere@uzamerewordprocessing.net

Case: 1:25−cv−01894 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 6/12/2025
Description: Pro Se Gen. Civ. (F−DECK)

## U.S. DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

**CHERYL D. UZAMERE,** Individually and in Her Official Capacity as Sole Proprietor of African Diasporal Enterprises and Uzamere Word Processing & More

*Plaintiff,*

- against -

1.   **DONALD J. TRUMP,** in His Official Capacity as President of the United States;

2.   **CHARLES SCHUMER,** in His Official Capacity as Senate Minority Leader for the Democratic Party;

3.   **HAKEEM JEFFRIES,** in His Official Capacity as House Minority Leader for the Democratic Party;

4.   **PAMELA JO BONDI, ESQ.,** in Her Official Capacity as Attorney General for the U.S. Department of Justice;

Civil Case No. _____

**VERIFIED COMPLAINT FOR DECLARATORY AND EMERGENCY )TEMPORARY AND PERMANENT) INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

**RECEIVED**
JUN 12 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

i

5.   **HARMEET DHILLON, ESQ.,** in Her Official Capacity as Assistant Attorney General for Civil Rights for the U.S. Department of Justice;    )
)
)
)
)

6.   **KRISTI NOEM,** in Her Official Capacity as Secretary of Homeland Security;    )
)
)
)

7.   **D. GREGG, SHIELD NO. 298,** in His Former Official Capacity as Law Enforcement Officer for the U.S. Department of Homeland Security;    )
)
)
)
)

8.   **RACHEL A. MCCARTHY, ESQ.,** in Her Former Official Capacity as Bar Counsel for the U.S. Citizenship and Immigration Service;    )
)
)
)
)

9.   **DENIS MCGOWAN,** in His Former Official Capacity as Director for the Federal Protective Service; U.S. Department of Homeland Security;    )
)
)
)
)

10.   **KIKA SCOTT,** in Her Official Capacity as Acting Director, U.S. Citizenship and Immigration Service;    )
)
)
)

11.   **EUGENIA A. COWLES, ESQ.,** in Her Official Capacity as Assistant U.S. Attorney for the District of Vermont;    )
)
)
)

12.   **WILLIAM PATRICK CAMPOS, ESQ.,** in His Official Capacity as Assistant U.S. Attorney for the Eastern District of New York;    )
)
)
)
)

13.   **THE HONORABLE RICHARD J. SULLIVAN,** in His Official Capacity as Circuit Judge for the U.S. Court of Appeals for the Second Circuit;    )
)
)
)
)

14.   **THE HONORABLE JOSEPH F. BIANCO,** in HIS Official Capacity as Circuit Judge for the U.S. Court of Appeals for the Second Circuit;    )
)
)
)

ii

15. **THE HONORABLE SUSAN L. CARNEY,** in Her Official Capacity as Circuit Judge for the U.S. Court of Appeals for the Second Circuit;

16. **THE HONORABLE ANTHONY J. BRINDISI,** in His Official Capacity as Federal Judge for the Northern District of New York;

17. **THE HONORABLE PAUL J. EVANGELISTA,** in His Official Capacity as Federal Judge for the Northern District of New York;

18. **THE HONORABLE NICHOLAS G. GARAUFIS,** in His Official Capacity as Federal Judge for the U.S. District Court for the Eastern District of New York;

19. **THE HONORABLE LA SHANN D'ARCY HALL,** in Her Official Capacity as Federal Judge for the U.S. District Court for the Eastern District of New York;

20. **THE HONORABLE RAMON REYES,** in His Official Capacity as Federal Judge for the U.S. District Court for the Eastern District of New York;

21. **THE HONORABLE STEVEN TISCIONE,** in His Official Capacity as Federal Judge for the U.S. District Court for the Eastern District of New York;

22. **THE HONORABLE LOIS BLOOM,** in Her Official Capacity as Federal Judge for the U.S. District Court for the Eastern District of New York;

23. **THE HONORABLE COLLEEN MCMAHON,** in Her Official Capacity as Federal Judge for the Southern District of New York;

24. **THE HONORABLE PATRICIA SULLIVAN,** in Her Official Capacity as Magistrate Judge for the U.S. Court for the District of Rhode Island;  )

25. **THE STATE OF NEW YORK,** in Its Official Capacity;  )

26. **KATHY HOCHUL,** in Her Official Capacity as Governor of the State of New York;  )

27. **LETITIA A. JAMES, ESQ.,** in Her Official Capacity as New York State Attorney General;  )

28. **BEEZLY JAMES KIERNAN, ESQ.,** in His Official Capacity as Assistant Attorney General for the New York State Attorney General's Office;  )

29. **LAURA ETLINGER, ESQ.,** in Her Official Capacity as Assistant Solicitor General for the New York State Attorney General's Office;  )

30. **ANTHONY ROTONDI, ESQ.,** in His Official Capacity as Assistant Attorney General for the New York State Attorney General's Office;  )

31. **DOUGLAS R. KEMP, ESQ.,** in His Official Capacity as Assistant Attorney General for the New York State Attorney General's Office;  )

32. **SHANNAN C. KRASNOKUTSKI, ESQ.,** in Her Official Capacity as Assistant Attorney General for the New York State Attorney General's Office;  )

33. **THE HONORABLE ROWAN D. WILSON,** in His Official Capacity as Chief Judge of the New York State Court of Appeals;  )

34. **THE HONORABLE ELIZABETH A. GARRY** in Her Official Capacity as Presiding Judge for the New York State Supreme Court Appellate Division, Third Judicial Department; )

35. **THE HONORABLE JOHN C. EGAN JR.** in His Official Capacity as Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department; )

36. **THE HONORABLE CHRISTINE M. CLARK** in Her Official Capacity as Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department; )

37. **THE HONORABLE SHARON A.M. AARONS** in Her Official Capacity as Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department; )

38. **THE HONORABLE STAN L. PRITZKER** in His Official Capacity as Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department; )

39. **THE HONORABLE MICHAEL C. LYNCH** in His Official Capacity as Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department; )

40. **THE HONORABLE MOLLY REYNOLDS FITZGERALD** in Her Official Capacity as Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department; )

v

**41.  THE HONORABLE ANDREW G.**
**CERESIA** in His Official Capacity as
Associate Judge for the New York State
Supreme Court Appellate Division,
Third Judicial Department;

**42.  THE HONORABLE LISA M.**
**FISHER** in Her Official Capacity as
Associate Judge for the New York State
Supreme Court Appellate Division,
Third Judicial Department;

**43.  THE HONORABLE EDDIE J.**
**MCSHAN** in His Official Capacity as
Associate Judge for the New York State
Supreme Court Appellate Division,
Third Judicial Department;

**44.  THE HONORABLE MARK L.**
**POWERS** in His Official Capacity as
Associate Judge for the New York State
Supreme Court Appellate Division,
Third Judicial Department;

**45.  THE HONORABLE L. MICHAEL**
**MACKEY** in His Official Capacity as
Associate Judge for the New York State
Supreme Court Appellate Division,
Third Judicial Department;

**46.  THE HONORABLE DIANNE**
**RENWICK,** in Her Official Capacity as
Presiding Judge for the New York State
Appellate Division, First Judicial
Department;

**47.  THE HONORABLE DAVID**
**FRIEDMAN,** in His Official Capacity
as Associate Judge for the New York
State Appellate Division, First Judicial
Department;

48. **THE HONORABLE SALLIE MANZANET-DANIELS,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;

49. **THE HONORABLE BARBARA R. KAPNICK,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;

50. **THE HONORABLE TROY K. WEBBER,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;

51. **THE HONORABLE ELLEN GESMER,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;

52. **THE HONORABLE CYNTHIA S. KERN,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;

53. **THE HONORABLE JEFFREY K. OING,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;

54. **THE HONORABLE ANIL C. SINGH,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;

55. **THE HONORABLE PETER H. MOULTON,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department; )

56. **THE HONORABLE LIZBETH GONZÁLEZ,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department; )

57. **THE HONORABLE TANYA R. KENNEDY,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department; )

58. **THE HONORABLE SALIANN SCARPULLA,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department; )

59. **THE HONORABLE MANUEL J. MENDEZ,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department; )

60. **THE HONORABLE MARTIN SHULMAN,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department; )

61. **THE HONORABLE JULIO RODRIGUEZ III,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department; )

62. **THE HONORABLE BAHAATI PITT-BURKE,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;                                   )
)
)
)
)
)

63. **THE HONORABLE JOHN R. HIGGITT,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;                                    )
)
)
)
)
)

64. **THE HONORABLE LLINÉT M. ROSADO,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;                                    )
)
)
)
)
)

65. **THE HONORABLE KELLY O'NEILL LEVY,** in His Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;                                    )
)
)
)
)
)

66. **THE HONORABLE MARSHA MICHAEL,** in Her Official Capacity as Associate Judge for the New York State Appellate Division, First Judicial Department;                                    )
)
)
)
)
)

67. **THE HONORABLE ADAM W. SILVERMAN,** in His Official Capacity as Justice for the Albany County Supreme Court;                                    )
)
)
)
)

68. **THE HONORABLE CHRISTINA L. RYBA,** in Her Official Capacity as Justice for the Albany County Supreme Court;                                    )
)
)
)
)

69. **THE HONORABLE JAMES FERREIRA,** in His Official Capacity as Justice for the Albany County Supreme Court;                                    )
)
)
)
)
)

ix

70. **THE HONORABLE JUSTICE CORCORAN,** in His Official Capacity as Justice for the Albany County Supreme Court;  )

71. **THE HONORABLE KIMBERLY A. O'CONNOR,** in Her Official Capacity as Justice for the Albany County Supreme Court;  )

72. **THE HONORABLE PETER A. LYNCH,** in His Official Capacity as Justice for the Albany County Supreme Court;  )

73. **THE HONORABLE ROGER MCDONOUGH,** in His Official Capacity as Justice for the Albany County Supreme Court;  )

74. **THE HONORABLE THOMAS MARCELLE,** in His Official Capacity as Justice for the Albany County Supreme Court;  )

75. **THE HONORABLE SUSAN M. KUSHNER,** in Her Official Capacity as Judge for the Albany County Family Court;  )

76. **THE HONORABLE JEFFREY S. SUNSHINE,** in His Capacity as Justice for the Kings County Supreme Court;  )

77. **THE HONORABLE JOY F. CAMPANELLI,** in Her Official Capacity as Justice for the Kings County Supreme Court;  )

78. **THE HONORABLE JACQUELINE D. WILLIAMS,** in Her Official Capacity as Judge for the Kings County Family Court;  )

x

**79.** **ADELE ALEXIS HARRIS,** in Her Official Capacity as Support Magistrate for the Kings County Family Court;

**80.** **THE CITY OF NEW YORK,** in Its Official Capacity;

**81.** **JESSICA TISCH,** in Her Official Capacity as Commissioner of the New York City Police Department;

**82.** **ERIC GONZALEZ, ESQ.,** in His Official Capacity as Brooklyn District Attorney;

**83.** **MURIEL GOODE-TRUFANT,** in Her Official Capacity as Corporation Counsel for the New York City Law Department;

**84.** **PHILIP W. YOUNG,** in His Official Capacity as Assistant Corporation Counsel for the New York City Law Department;

**85.** **JONATHAN L. PINES, ESQ.,** in His Official Capacity as Assistant Corporation Counsel for the New York City Law Department;

**86.** **NEW YORK CITY HOUSING AUTHORITY,** in Its Official Capacity;

**87.** **JAMIE RUBIN,** in His Official Capacity as Chair of the New York City Housing Authority;

**88.** **LISA BOVA-HIATT, ESQ.,** in Her Official Capacity as Chief Executive Officer of the New York City Housing Authority;

**89.** **DAVID ROHDE, ESQ.,** in His Official Capacity as General Counsel for the New York City Housing Authority;

**90.**  **SETH KRAMER, ESQ.,** in His Official Capacity as Attorney for the New York City Housing Authority;    )
)
)
)

**91.**  **HARVEY SHAPIRO, ESQ.** for Declaratory and Injunctive Relief;    )
)
)

**92.**  **EHIGIE EDOBOR UZAMERE** for Declaratory and Injunctive Relief;    )
)
)
)

*Defendants.*    )

# TABLE OF CONTENTS

Introduction ..................................................................................................1

Parties .........................................................................................................5

Jurisdiction and Venue ...............................................................................14

Background .................................................................................................14

    A. "This Wolf Comes as a Wolf;" Jewish Leadership's
       Religious Predation Based on the IHRA's Working
       Definition of Antisemitism .............................................................14

    B. Benjamin Netanyahu's Promise to Make the Babylonian
       Talmud the Official (*De Facto*) Law of Israel and the U.S.
       Government's Act of Sedition by Enforcing the Jewish
       Religion's Mandate to Love All Jews ..............................................15

Nature of the Action ..................................................................................18

Factual Allegations ...................................................................................26

Legal Analysis ..........................................................................................57

    Viewpoint Discrimination is Unconstitutional ..................................57

    First Amendments Free Exercise Clause Incorporates
    the Due Process Clause of the Fourth Amendment ...........................58

    The Government Cannot Regulate or Establish a
    Religion ..........................................................................................59

    The Government Cannot Enforce Laws that Abridge
    the Privileges or Immunities of U.S. Citizens ...................................59

Causes of Action

    FIRST CAUSE OF ACTION
    Violation of the First Amendment Freedom of Speech
    Clause ............................................................................................61

    SECOND CAUSE OF ACTION
    Violation of the First Amendment's Free Exercise
    Clause ............................................................................................65

THIRD CAUSE OF ACTION
Violation of 18 U.S.C. § 242, Deprivation of Rights Under
Color of Law as Applied through the Fourteenth Amendment's
Privileges/Immunity Clause (*ultra vires*)........................................................76

VII.    Prayer for Relief ......................................................................80

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Top Photos:** Jewish leadership's enforcement of the Babylonian Talmud's espousal of the hatred of Africans to engage in the sexually sadistic enslavement of people of African descent; **Bottom Photo:** Jewish Judge Nicholas G. Garaufis extrajudicial order to have federal law enforcement sexual terrorize me during the malicious prosecution and malicious adjudication in the case *United States of America v. Cheryl D. Uzamere,* Violation No. 6185448 that was implicitly ordered by U.S. Attorney for Vermont Eugenia A. Cowles' in continuance of her act of prosecutorial misconduct to suppress criminal evidence of immigration fraud by fellow Jew Allen E. Kaye based on her enforcement of Babylonian Talmud-based anti-black bigotry and whistleblower retaliation in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cv-00114 in which she maliciously charged me with a crime I did not commit to prevent me from reporting my husband's immigration fraud that was aided and abetted by fellow Jews Allen E. Kaye and Harvey Shapiro.



ת"ר שלשה שמשו בתיבה וכולם לקו כלב ועורב וחם כלב נקשר עורב רק חם לקה בעורו

Babylonian Talmud, Tractate Sanhedrin, Folio 108b: The Sages taught: Three violated that directive and engaged in intercourse while in the ark, and all of them were punished for doing so. They are: The dog, and the raven, and Ham, son of Noah. The dog was punished in that it is bound; the raven was punished in that it spits, and Ham was afflicted in that his skin turned black.

## INTRODUCTION

1.    I, Cheryl D. Uzamere, the Plaintiff, appear on my own behalf as an adherent of the Jehovah's Christian Witnesses sect. As such, I bring this action to challenge Executive Order 14188, *Additional Measures to Combat Antisemitism* that reaffirms Executive Order

1

13899 as it unconstitutionally restricts my First Amendment right to practice Christianity, which holds as religious dogma: (1) Jehovah's rejection of Israel based on Israel's worship of the god Molech, the god of pedophilia and child sacrifice; and (2) the ransom sacrifice of my Lord and Savior, Jesus Christ, whose death was accomplished at the behest of scribes and pharisees of the nation of Israel. Both Executive Order 13899 and Executive Order 14188 violate the Establishment Clause that prohibits the government from establishing a religion; and the Free Exercise Clause, that protects individuals' right to practice their religion (or not) as they choose, as long as it doesn't violate public morals or a compelling government interest. I challenge the government's promulgation of Executive Law 13899 and Executive Law 14188 because it violates my Fourteenth Amendment right to equal protection as an African American/non-Jew who practices Christianity. I further challenge the government's promulgation of Executive Order 13899 and Executive Order 14188 as a clear violation of the Fourteenth Amendment's prohibition against enforcing any law that abridges the privileges or immunities of citizens of the United States. The promulgation of Executive Order 13899 and Executive Order 14188 is designed to subject individuals who engage in disseminating information regarding members of Jewish leadership who engage in unconstitutional, tortious or criminal acts that are permitted by the Babylonian Talmud to be subjected to Jewish leadership's interference with commerce by threats, violence and other tortious and criminal offenses.

2.      As an adherent of the Jehovah's Christian Witnesses religion, I have the right to publicize my beliefs regarding the Almighty God Jehovah and His Only Begotten Son, my Lord and Savior, Jesus Christ and their rejection of the Nation of Israel based on Israel's long-term contempt of lawful mandates as disseminated by Jehovah's prophets. History clearly establishes

2

that Jehovah's Witnesses experienced extreme persecution, including murder during Hitler's tyrannical control of Germany and Eastern Europe because of Jehovah's Witnesses' refusal to engage in political affairs and their refusal to abandon their belief that Jehovah is the True God.

3.    Jehovah's Witnesses were also persecuted throughout the United States. Jehovah's Witnesses challenged governmental agencies all the way to the U.S. Supreme Court to enforce their constitutional right and biblical responsibility to "speak the word with boldness" in spite of governmental agencies and private individuals who found the teachings of Jehovah's Witnesses distasteful:

a.    Cantwell v. Connecticut (1940): A 1940 Supreme Court landmark decision in Cantwell v. Connecticut affirmed the religious freedom rights of a Jehovah's Witness man to go door-to-door;

b.    Jane Doe" v. Leon Black: In Fowler v. Rhode Island (1953), the court held that preventing a Jehovah's Witness from holding a religious service in a public park but allowing other religious services to be held violated the First Amendment.

c.    Jamison v. Texas (1943): In Jamison v. Texas, the Court, on First Amendment grounds, overturned the conviction of a Jehovah's Witness who distributed handbills on the streets because it violated the First Amendment and the Fourteenth Amendment.

d.    Largent v. Texas (1943): Largent v Texas (1943) said giving a city mayor the power to determine who can distribute pamphlets is censorship and not allowed under the First Amendment...

e.    Lovell v. City of Griffin (1938): Lovell v. City of Griffin (1938) overturned the conviction of a Jehovah's Witness who sold a pamphlet without getting prior permission from the city on First Amendment ground.

f.    Watchtower Bible and Tract Society v. Village of Stratton (2002): Watchtower Bible and Tract Society v. Village of Stratton (2002) said an ordinance making it a misdemeanor to canvass door-to-door without a permit violated the First Amendment.

3

*See* documentation regarding Jehovah's Witnesses and non-Jewish victims of the Holocaust attached as **Exhibit 1**.

Jehovah's Witnesses were subjected to the same horrors as Jews and other non-Jews who were killed in concentration camps in Nazi Germany…



…but (Ashkenazi) Jews are the only group of individuals who have assigned a name to, and politicized past hatred against them to rationalize acts of violence against innocent individuals

The Lavon affair was a failed Israeli covert operation, codenamed Operation Susannah, conducted in Egypt in the summer of 1954. As part of a false flag operation, a group of Egyptian Jews were recruited by Israeli military intelligence to plant bombs inside Egyptian-, American-, and British-owned civilian targets: cinemas, libraries, and American educational centers.







Washington Report on Middle East Affairs, Reverdy S. Fishel, 2016 June/July, posted on June 1, 2016): "Twice, the Israeli pilots were heard reporting it to be an American ship."

4

4.      It is not always obvious when the government has acted with a retaliatory purpose in violation of the First Amendment; however, in this case, "this wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting). President Trump's promulgation of Executive Order 14188 and Executive Order 13899 is a violation of the U.S. Constitution's prohibition from establishing a government religion. It is a threat to me as a person who practices Christianity because, since Jesus Christ's murder at the behest of Jewish leaders, the Jewish religion has exhibited such great hatred for Christianity that the practice of Christianity can be viewed as antisemitic.  *See* articles entitled *Netanyahu Promises Talmud Will Be Israel's Law*, *Netanyahu Reported to Say Legal System Based on Talmud*, and *Come and Hear, America's New Government Church* attached as **Exhibit 2**.

## PARTIES

5.      Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

6.      Defendant Charles Schumer is the Senate Minority Leader for the Democratic Party. He is sued in his official capacity.

7.      Defendant Hakeem Jeffries is the House Minority Leader for the Democratic Party. He is sued in his official capacity.

8.      Defendant Pamela Jo Bondi, Esq. is the  Attorney General for the U.S. Department of Justice. She is sued in her official capacity.

9.      Defendant Harmeet Dhillon, Esq. is the  Assistant Attorney General for Civil Rights for the U.S. Department of Justice. She is sued in her official capacity.

10.      Defendant Kristi Noem is the  Secretary of Homeland Security. She is sued in her official capacity.

5

11.     Defendant D. Gregg, Shield No. 298, is a former law enforcement officer for the U.S. Department of Homeland Security. He is sued in his former official capacity.

12.     Defendant Rachel A. McCarthy, Esq., was Bar Counsel for the U.S. Citizenship and Immigration Service. She is sued in her former official capacity.

13.     Defendant Denis McGowan is a former Director for the Federal Protective Service for the U.S. Department of Homeland Security. He is sued in his former official capacity.

14.     Defendant Kika Scott is the Acting Director, U.S. Citizenship and Immigration Service. She is sued in her official capacity.

15.     Defendant Eugenia A. Cowles, Esq. is an Assistant U.S. Attorney for the District of Vermont. She is sued in her official capacity.

16.     Defendant William Patrick Campos, Esq. is the Assistant U.S. Attorney for the Eastern District of New York. He is sued in his official capacity.

17.     Defendant the Honorable Richard J. Sullivan is a Circuit Judge for the U.S. Court of Appeals for the Second Circuit. He is sued in his official capacity.

18.     Defendant the Honorable Joseph F. Bianco is a Circuit Judge for the U.S. Court of Appeals for the Second Circuit. He is sued in his official capacity.

19.     Defendant the Honorable Susan L. Carney is a Circuit Judge for the U.S. Court of Appeals for the Second Circuit. She is sued in her official capacity.

20.     Defendant the Honorable Anthony J. Brindisi is a federal judge for the Northern District of New York. He is sued in his official capacity.

21.     Defendant the Honorable Paul J. Evangelista is a federal judge for the Northern District of New York. He is sued in his official capacity.

22.     Defendant the Honorable Nicholas G. Garaufis is a federal judge for the U.S. District Court for the Eastern District of New York. He is sued in his official capacity.

23.     Defendant the Honorable La Shann D'Arcy Hall is a federal judge for the U.S. District Court for the Eastern District of New York. She is sued in her official capacity.

24.     Defendant the Honorable Ramon Reyes is a federal judge for the U.S. District Court for the Eastern District of New York. He is sued in his official capacity.

25.     Defendant the Honorable Steven Tiscione is a Federal Judge for the U.S. District Court for the Eastern District of New York. He is sued in his official capacity.

26.     Defendant the Honorable Lois Bloom is a federal judge for the U.S. District Court for the Eastern District of New York. She is sued in her official capacity.

27.     Defendant the Honorable Colleen McMahon is a federal judge for the Southern District of New York. She is sued in her official capacity.

28.     Defendant the Honorable Patricia Sullivan is the Magistrate Judge for the U.S. Court for the District of Rhode Island. She is sued in her official capacity.

29.     Defendant the State of New York is sued in its official capacity.

30.     Defendant Kathy Hochul is the Governor of the State of New York. She is sued in her official capacity.

31.     Defendant Letitia A. James, Esq. is the New York State Attorney General. She is sued in her official capacity.

32.     Defendant Beezly James Kiernan, Esq. is an Assistant Attorney General for the New York State Attorney General's Office. He is sued in his official capacity.

33.     Defendant Laura Etlinger, Esq. is an Assistant Solicitor General for the New York State Attorney General's Office. She is sued in her official capacity.

7

34.     Defendant Anthony Rotondi, Esq. is an Assistant Attorney General for the New York State Attorney General's Office. He is sued in his official capacity.

35.     Defendant Douglas R. Kemp, Esq. is an Assistant Attorney General for the New York State Attorney General's Office. He is sued in his official capacity.

36.     Defendant Shannan C. Krasnokutski, Esq. is an Assistant Attorney General for the New York State Attorney General's Office. She is sued in her official capacity.

37.     Defendant the Honorable Rowan D. Wilson is the Chief Judge of the New York State Court of Appeals. He is sued in his official capacity.

38.     Defendant the Honorable Elizabeth A. Garry is the Presiding Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. She is sued in her official capacity.

39.     Defendant the Honorable John C. Egan Jr. is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. He is sued in his official capacity.

40.     Defendant the Honorable Christine M. Clark is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. She is sued in her official capacity.

41.     Defendant the Honorable Sharon A.M. Aarons is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. She is sued in her official capacity.

42.     Defendant the Honorable Stan L. Pritzker is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. He is sued in his official capacity.

43.    Defendant the Honorable Michael C. Lynch  is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. He is sued in his official capacity.

44.    Defendant the Honorable Molly Reynolds Fitzgerald  is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. She is sued in her official capacity.

45.    Defendant the Honorable Andrew G. Ceresia  is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. He is sued in his official capacity.

46.    Defendant the Honorable Lisa M. Fisher is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. She is sued in her official capacity.

47.    Defendant the Honorable Eddie J. McShan is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. He is sued in his official capacity.

48.    Defendant the Honorable Mark L. Powers is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. He is sued in his official capacity.

49.    Defendant the Honorable L. Michael Mackey  is an Associate Judge for the New York State Supreme Court Appellate Division, Third Judicial Department. He is sued in his official capacity.

50.    Defendant the Honorable Dianne Renwick is the Presiding Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

9

51.     Defendant the Honorable David Friedman is an Associate Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

52.     Defendant the Honorable Sallie Manzanet-Daniels is an Associate Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

53.     Defendant the Honorable Barbara R. Kapnick is an Associate Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

54.     Defendant the Honorable Troy K. Webber is an Associate Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

55.     Defendant the Honorable Ellen Gesmer is Associate Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

56.     Defendant the Honorable Cynthia S. Kern is an Associate Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

57.     Defendant the Honorable Jeffrey K. Oing is an Associate Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

58.     Defendant the Honorable Anil C. Singh is an Associate Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

59.     Defendant the Honorable Peter H. Moulton is an Associate Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

60.     Defendant the Honorable Lizbeth González is a Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

61.     Defendant the Honorable Tanya R. Kennedy is a Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

62.    Defendant the Honorable Saliann Scarpulla is a Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

63.    Defendant the Honorable Manuel J. Mendez is a Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

64.    Defendant the Honorable Martin Shulman is a Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

65.    Defendant the Honorable Julio Rodriguez III is a Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

66.    Defendant the Honorable Bahaati Pitt-Burke is a Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

67.    Defendant the Honorable John R. Higgitt is a Judge for the New York State Appellate Division, First Judicial Department. He is sued in his official capacity.

68.    Defendant the Honorable Llinét M. Rosado is a Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

69.    Defendant the Honorable Kelly O'Neill Levy is a Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

70.    Defendant the Honorable Marsha Michael is a Judge for the New York State Appellate Division, First Judicial Department. She is sued in her official capacity.

71.    Defendant the Honorable Adam W. Silverman is a Justice for the Albany County Supreme Court. He is sued in his official capacity.

72.    Defendant the Honorable Christina L. Ryba is a Justice for the Albany County Supreme Court. She is sued in her official capacity.

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

73.     Defendant the Honorable James Ferreira is a Justice for the Albany County Supreme Court. He is sued in his official capacity.

74.     Defendant the Honorable Justin O. Corcoran is a Justice for the Albany County Supreme Court. He is sued in his official capacity.

75.     Defendant the Honorable Kimberly A. O'Connor is a Justice for the Albany County Supreme Court. She is sued in her official capacity.

76.     Defendant the Honorable Peter A. Lynch is a Justice for the Albany County Supreme Court. He is sued in his official capacity.

77.     Defendant the Honorable Roger McDonough is a Justice for the Albany County Supreme Court. He is sued in his official capacity.

78.     Defendant the Honorable Thomas Marcelle is a Justice for the Albany County Supreme Court. He is sued in his official capacity.

79.     Defendant the Honorable Susan M. Kushner is the Judge for the Albany County Family Court. She is sued in her official capacity.

80.     Defendant the Honorable Jeffrey S. Sunshine is a Justice for the Kings County Supreme Court. He is sued in his official capacity.

81.     Defendant the Honorable Joy F. Campanelli is a Justice for the Kings County Supreme Court. She is sued in her official capacity.

82.     Defendant the Honorable Jacqueline D. Williams is a Judge for the Kings County Family Court. She is sued in her official capacity.

83.     Defendant Adele Alexis Harris is the  Support Magistrate for the Kings County Family Court. She is sued in his official capacity.

84.     Defendant the City of New York, is sued in its official capacity.

12

85.     Defendant Jessica Tisch is the Commissioner of the New York City Police Department. She is sued in her official capacity.

86.     Defendant Eric Gonzalez, Esq. is the  Brooklyn District Attorney. He is sued in his official capacity.

87.     Defendant Muriel Goode-Trufant is the  Corporation Counsel for the New York City Law Department. She is sued in her official capacity.

88.     Defendant Philip W. Young is the  Assistant Corporation Counsel for the New York City Law Department. He is sued in his official capacity.

89.     Defendant Jonathan L. Pines, Esq. is an Assistant Corporation Counsel for the New York City Law Department. He is sued in his official capacity.

90.     Defendant New York City Housing Authority is sued in its official capacity.

91.     Defendant Jamie Rubin is the Chair of the New York City Housing Authority. He is sued in his official capacity.

92.     Defendant Lisa Bova-Hiatt, Esq. is the Chief Executive Officer of the New York City Housing Authority. She is sued in her official capacity.

93.     Defendant David Rohde, Esq. is the General Counsel for the New York City Housing Authority. He is sued in his official capacity.

94.     Defendant Seth E. Kramer, Esq. is the Attorney for the New York City Housing Authority. He is sued in his official capacity.

95.     Defendant Harvey Shapiro, Esq. is a private attorney. He is sued for declaratory and injunctive Relief. He is sued in his official capacity.

96.     Ehigie Edobor Uzamere is my husband. He is sued for declaratory and injunctive relief.

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

97.     This Court has subject-matter jurisdiction because this action arises under the Constitution of the United States and federal statutes, 28 U.S.C. § 1331, and because some of the individual Defendants are United States officials, 28 U.S.C. § 1346(a)(2).

98.     The Court is authorized to award the requested relief under 28 U.S.C. §§ 2201 and 2202 and pursuant to its inherent equitable powers.

99.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims, (the promulgation of Executive Orders occurred in the District of Columbia); and under 28 U.S.C. § 1391(e)(1) because some of the federal agency defendants reside in the District of Columbia.

## BACKGROUND

### A.     "This Wolf Comes as a Wolf;" Jewish Leadership's Religious Predation Based on the IHRA's Working Definition of Antisemitism

100.    The International Holocaust Remembrance Alliance is, like the Anti-Defamation League and the Southern Poverty Law Center, a predatory, public media racket that engages in widespread deception to ensure that the general public does not discover that the Babylonian Talmudic definition of antisemitism requires the public's acceptance of illegal/immoral acts that the Babylonian Talmud allows Jews to do to non-Jews; and to place the cloak of "victimhood" on Israel and the Jewish community by sensationalizing antisemitism's racist, one-sided meaning that focuses on 6,000,000 Ashkenazi Jews who were victims of the Holocaust, while ignoring the fact that there were 5,000,000 non-Jews who were executed during the Holocaust, and while making no attempt to form a working definition of any form of anti-gentilism:

14

"Antisemitism is a certain perception of Jews, which may be expressed as hatred toward Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities."

**B.      Benjamin Netanyahu's Promise to Make the Babylonian Talmud the Official (*De Facto*) Law of Israel and the U.S. Government's Act of Sedition by Enforcing the Jewish Religion's Mandate to Love All Jews**

101.    The Time of Israel's article entitled *Netanyahu Reported to Say Legal System Based on Talmud* states:

As part of proposed legislation to enshrine Israel's status as a Jewish state, the Israel court system would be based on Talmud Law and the Jewish calendar would be formally adopted, Prime Minister Netanyahu allegedly told Yaakov Vider, a member of the Likud Party's ultra-Orthodox faction.

102.    The IHRA's working definition of antisemitism is strikingly close to Jewish religious law that requires non-Jews to see Jews, individually and collectively in a positive light, although the same religious mandate allows Jews to hate non-Jews and see them in a negative light:

You Shall Not Hate/You Shall Love Your Neighbor as Yourself
http://www.come-and-hear.com/supplement/so-daat-emet/en_gentiles4.html#f3

It is written in the Torah (Leviticus 19:17): "You shall not hate your brother in your heart. You shall certainly rebuke your neighbor and not suffer sin on his account" -- so it is clearly stated in the Torah that this prohibition specifically regards Jews. And so Maimonides wrote in The Laws of Mental States, chapter 6, halacha 6 (in the printed edition, halacha 5): "Anyone who hates a Jew in his heart transgresses a negative commandment, as it says: 'You shall not hate your brother in your heart'."

It is written in the Torah (Leviticus 19:18): "You shall not avenge, nor bear any grudge against the children of your people, but you shall love your neighbor as yourself: I am the Lord" -- here also the verse yells out "the children of your people." In Torat Cohanim on the portion of Kedoshim, chapter 4, halacha 12: "You shall not avenge nor bear a grudge against the children of your people -- but you can avenge and bear a grudge against others" (that is, against Gentiles -- explanation of the Ra'avad).

In chapter 6 of The Laws of Mental States, halacha 4 (in the printed edition, halacha 3): "It is a commandment for every person to love each and every Jew as he loves himself, as it says: 'You shall love your neighbor as yourself'."

15

Babylonian Talmud, Tractate Avodah Zarah, 26b
https://www.sefaria.org/Avodah_Zarah.26b?lang=bi

לא מורידין אבל המינין והמסורות והמומרים היו מורידין ולא מעלין

… But the heretics, and the *informers,* and the apostates [vehameshummadim] are lowered into a pit, but not raised out of it.

Informing on Fellow Jews who Commit Crimes
http://www.come-and-hear.com/editor/moser-broyde/index.html

Even though Jewish law expects people to observe the laws of the land, and even imposes that obligation as a religious duty, the Talmud recounts - in a number of places - that it is prohibited to inform on Jews to the secular government, even when their conduct is a violation of secular law and even when their conduct is a violation of Jewish law. While there are a number of exceptions to this prohibition (which are explained further in this section), the essential halacha was that Jewish law prohibits such informing absent specific circumstances. Even is secular government were to incorporate substantive Jewish law into secular law and punish violations of what is, in effect, Jewish law, Jews would still be prohibited from cooperating with such a system. Indeed, classical Jewish law treats a person who frequently informs on others as a pursuer (a rodef) who may be killed to prevent him from informing, even without a formal court ruling.

*See* article entitled *IHRA Non-Legally Binding Working Definition of Antisemitism* attached as **Exhibit 3**.

103.    I reported the Babylonian Talmudic doctrine known as *Law of Moser* in my petition for a writ of certiorari in the case *Cheryl D. Uzamere v. New York, et al,* No. 20-149. The filing of the subject petition began with the case *Cheryl D. Uzamere v. The State of New York,* Docket No. 1:19-cv-9064, in which defendant the Honorable Colleen McMahon complied with defendant Eugenia A. Cowles' implicit instruction to dismiss any case in which I presented Defendant Cowles' act of prosecutorial misconduct during the adjudication of the case *United States of America v. Cheryl Uzamere*, Docket No. 1:08-cr-00114-jgm as an act of antisemitism. It included Defendant McMahon's aiding and abetting fellow defendant the Honorable Nicholas G. Garaufis' secret adjudication of the criminal case *United States of America v. Cheryl D. Uzamere,* Violation No. 6185448 in which he intentionally withheld assistance of counsel after he orchestrated the nonjudicial staff of the U.S. District Court for

the Eastern District of New York to provide me with a falsified letter stating that the criminal case against me was dismissed on April 3, 2018, two (2) weeks after secretly granting the continuance of the criminal case in order to comply with Defendant Cowles' implicit instruction to punish me for engaging in antisemitism. *See* my petition for a writ of certiorari in the case *Cheryl D. Uzamere v. New York,* No. 20-149 attached as **Exhibit 4**.



1

### NATURE OF THE ACTION

2

104.    This is a civil complaint for declaratory and injunctive relief to revoke Executive

3

4

Order 13899 and Executive Order 14188 and to end the deleterious effects that the U.S.

5

government's unconstitutional politicization of the religious tort of antisemitism has had on the

6

U.S. public.

7

105.    Deuteronomy 6:4 says:

8

ד שְׁמַע, יִשְׂרָאֵל: יְהוָה אֱלֹהֵינוּ, יְהוָה אֶחָד.

9

Hear, O Israel, Jehovah our God is one Jehovah.

10

106.    Moreover, Jehovah God does not permit his followers to remain silent when

11

12

witnessing acts that violate Jehovah's righteous laws:

13

Leviticus 5:1:

14

א וְנֶפֶשׁ כִּי-תֶחֱטָא, וְשָׁמְעָה קוֹל אָלָה, וְהוּא עֵד, אוֹ רָאָה אוֹ יָדָע; אִם-לוֹא יַגִּיד, וְנָשָׂא עֲוֹנוֹ.

15

16

"'If someone sins because he has heard a public call to testify and he is a witness or has seen or learned about it and he does not report it, then he will answer for his error.

17

Leviticus 19:16:

18

טז לֹא-תֵלֵךְ רָכִיל בְּעַמֶּיךָ, לֹא תַעֲמֹד עַל-דַּם רֵעֶךָ: אֲנִי, יְהוָה.

19

You must not go around spreading slander among your people. You must not stand up against the life of your fellow man. I am Jehovah (Lo tishtok/Do not remain silent).

20

107.    As a servant of יְהוָה/Jehovah, it is my biblical duty as an adherent to advise

21

22

individuals of what Jehovah God considers to be in violation of His righteous laws. Jehovah

23

considers the sacrifice of children to be immoral. Jehovah also considers sexual relations outside

24

of the institution of male/female marriage, including sex with children and gang-rape to be

25

immoral:

26

27

28

Leviticus Chapter 20 וַיִּקְרָא

https://mechon-mamre.org/p/pt/pt0320.htm?df5ab966fc;
https://www.jw.org/en/library/bible/study-bible/books/leviticus/20/

א וַיְדַבֵּר יְהוָה, אֶל-מֹשֶׁה לֵּאמֹר. ב וְאֶל-בְּנֵי יִשְׂרָאֵל, תֹּאמַר, אִישׁ אִישׁ מִבְּנֵי יִשְׂרָאֵל וּמִן-הַגֵּר הַגָּר בְּיִשְׂרָאֵל אֲשֶׁר יִתֵּן מִזַּרְעוֹ לַמֹּלֶךְ, מוֹת יוּמָת; עַם הָאָרֶץ, יִרְגְּמֻהוּ בָאָבֶן. ג וַאֲנִי אֶתֵּן אֶת-פָּנַי, בָּאִישׁ הַהוּא, וְהִכְרַתִּי אֹתוֹ, מִקֶּרֶב עַמּוֹ: כִּי מִזַּרְעוֹ, נָתַן לַמֹּלֶךְ--לְמַעַן טַמֵּא אֶת-מִקְדָּשִׁי, וּלְחַלֵּל אֶת-שֵׁם קָדְשִׁי. ד וְאִם הַעְלֵם יַעְלִימוּ עַם הָאָרֶץ אֶת-עֵינֵיהֶם, מִן-הָאִישׁ הַהוּא, בְּתִתּוֹ מִזַּרְעוֹ, לַמֹּלֶךְ--לְבִלְתִּי, הָמִית אֹתוֹ. ה וְשַׂמְתִּי אֲנִי אֶת-פָּנַי בָּאִישׁ הַהוּא, וּבְמִשְׁפַּחְתּוֹ; וְהִכְרַתִּי אֹתוֹ וְאֵת כָּל-הַזֹּנִים אַחֲרָיו, לִזְנוֹת אַחֲרֵי הַמֹּלֶךְ--מִקֶּרֶב עַמָּם.

Jehovah went on speaking to Moses, saying: "You are to say to the Israelites, 'Any man of Israel and any foreigner who resides in Israel who gives any of his offspring to Mo′lech should be put to death without fail. The people of the land should stone him to death. I myself will set my face against that man, and I will cut him off from among his people, because he has given some of his offspring to Mo′lech and has defiled my holy place and has profaned my holy name. If the people of the land should deliberately close their eyes to what that man does when he gives his offspring to Mo′lech and they do not put him to death, then I myself will certainly set my face against that man and his family. I will cut off that man from his people along with all who join him in prostituting themselves to Mo′lech.

Deuteronomy Chapter 22 דְּבָרִים

https://mechon-mamre.org/p/pt/pt0522.htm?df5ab966fc
https://www.jw.org/en/library/bible/study-bible/books/deuteronomy/22/

כה וְאִם-בַּשָּׂדֶה יִמְצָא הָאִישׁ, אֶת-הַנַּעֲרָ הַמְאֹרָשָׂה, וְהֶחֱזִיק-בָּהּ הָאִישׁ, וְשָׁכַב עִמָּהּ:  וּמֵת, הָאִישׁ אֲשֶׁר-שָׁכַב עִמָּהּ--לְבַדּוֹ. כו וְלַנַּעֲרָ לֹא-תַעֲשֶׂה דָבָר, אֵין לַנַּעֲרָ חֵטְא מָוֶת: כִּי כַּאֲשֶׁר יָקוּם אִישׁ עַל-רֵעֵהוּ, וּרְצָחוֹ נֶפֶשׁ-- עִמָּהּ. כז כִּי בַשָּׂדֶה, מְצָאָהּ; צָעֲקָה, הַנַּעֲרָ הַמְאֹרָשָׂה, וְאֵין מוֹשִׁיעַ, לָהּ.  {ס} כֵּן, הַדָּבָר הַזֶּה.

If, however, the man happened to meet the engaged girl in the field and the man overpowered her and lay down with her, the man who lay down with her is to die by himself, and you must do nothing to the girl. The girl has not committed a sin deserving of death. This case is the same as when a man attacks his fellow man and murders him. For he happened to meet her in the field, and the engaged girl screamed, but there was no one to rescue her.

108.   This is not the case concerning Babylonian Talmud-based Judaism. According to the Babylonian Talmud, grown men can have sex with children:

Babylonian Talmud, Tractate Kethuboth, Folio 11b
https://www.sefaria.org/Ketubot.11b.6?lang=bi&with=all&lang2=en

אָמַר רָבָא, הָכִי קָאָמַר: גָּדוֹל הַבָּא עַל הַקְּטַנָּה — וְלֹא כְּלוּם, דְּפָחוֹת מִכָּאן כְּנוֹתֵן אֶצְבַּע בְּעַיִן דָּמֵי. וְקָטָן הַבָּא עַל הַגְּדוֹלָה — עֲשָׂאָהּ מוּכַּת עֵץ. וּמוּכַּת עֵץ גּוּפָא פְּלוּגְתָּא דְּרַבִּי מֵאִיר וְרַבָּנַן.

Rava said that this is what the Mishna is saying: An adult man who engaged in intercourse with a minor girl less than three years old has done nothing, as intercourse with a girl less than three years old is tantamount to poking a finger into the eye. In the case of an eye, after a tear falls from it another tear forms to replace it. Similarly, the ruptured hymen of the girl younger than three is restored.

19

Come and Hear: New America, Sex with Children by Talmud Rules
http://www.come-and-hear.com/editor/america_2.html

Again, there is no prohibition of a sexual practice that would almost certainly cause physical damage to a young girl due to the mismatched sizes of genitals between an adult's penis and a child's vagina or anus.

We have seen in Numbers 31:12-18 that Moses permitted grown men to use little girls as concubines. In the Talmud, grown men are permitted to have sexual intercourse with female babies and children, and homosexual relations with boys younger than nine.

Those "good old fashioned Torah values" are not quite as Christian America remembers them.

*See* documentation from the *Babylonian Talmud, Tractate Ketubot* and *Come and Hear, New America, Sex with Children by Talmud Rules* attached as **Exhibit 5**.



109.    The case *Haim Zuckerman v. Yeshiva & Mesivta Bais Yisroel, Rabbi Avraham Leizerowitz and Avrohom Mondrowitz,* Index 512187/2020 details how Jewish sexual predator Avrohom Mondrowitz engaged his religious right to sexually abuse both Jewish and Italian-American children. This case shows how Brooklyn District Attorney's employees' political emasculation based on fear of being labeled antisemitic contributed to the subsequent *de facto* enforcement of the prohibition against antisemitism:

Avrohom Mondrowitz is quite possibly Brooklyn's most notorious pedophile.  Masquerading as a rabbi and psychologist, complete with fake degrees, he is estimated to have abused and raped at least 300 children from the late 1970s onwards; by 1984, when he fled from justice into the welcoming arms of the Ger Hasidic community in Israel, he left behind an almost unimaginable trail of devastation…His escape to Israel was orchestrated by members of Brooklyn's Hasidic community, while successive Israeli governments and Charles Hynes, elected as Brooklyn's District Attorney with the support of the Hasidic community after Mondrowitz fled, entered into a decades-long conspiracy of inaction and complicity.

*See* complaint *Haim Zuckerman v. Yeshiva & Mesivta Bais Yisroel, Rabbi Avraham Leizerowitz and Avrohom Mondrowitz* attached as **Exhibit 6**.

110.    Babylonian Talmud-based Judaism also allows children to be sacrificed to the god Molech:

Babylonian Talmud, Tractate Sanhedrin, Folio 64a
https://www.sefaria.org/Sanhedrin.64a.17?lang=bi&with=all&lang2=en

מַתְנִי׳ הַנּוֹתֵן מִזַּרְעוֹ לַמּוֹלֶךְ, אֵינוֹ חַיָּיב עַד שֶׁיִּמְסוֹר לַמּוֹלֶךְ וְיַעֲבִיר בָּאֵשׁ. מָסַר לַמּוֹלֶךְ וְלֹא הֶעֱבִיר בָּאֵשׁ, הֶעֱבִיר בָּאֵשׁ וְלֹא מָסַר לַמּוֹלֶךְ – אֵינוֹ חַיָּיב עַד שֶׁיִּמְסוֹר לַמּוֹלֶךְ וְיַעֲבִיר בָּאֵשׁ.

MISHNA: One who gives of his offspring to Molekh, for which one is executed by stoning, is not liable unless he hands over his child to the priests of Molekh and passes the child through the fire. If he handed over the child to the priests of Molekh but did not pass him through the fire, or if he passed him through the fire but did not hand him over to the priests of Molekh, he is not liable, unless he hands the child over to the priests of Molekh and passes him through the fire.

Come and Hear, Blood Ritual, Holy Atrocities and Judaism
http://www.come-and-hear.com/editor/br_1.html

The Holy Atrocity is relevant to today's political situation in the Middle East and the role America will play: The Holy Atrocity is advocated as a political solution. One of the advocates is Washington, DC lawyer Nathan Lewin, who represents Orthodox Jewish interest groups in high-profile legal disputes. In an article published in May 2002 in the opinion magazine Shma.com, Lewin called for the massacre of families of Palestinians accused of suicide bombing. He introduces the subject with these words:

What if Israel and the United States announced that henceforth the perpetrators of all suicide attacks would be treated as if they had brought their parents and brothers and sisters with them to the site of the explosion?

Attorney Nathan Lewin, who wants the United States to join with Israel in massacring Palestinian families, is assisting Buffalo Law School professor Rabbi Noson Gurary to set up the National Institute for Judaic law. The purpose of the Institute is to inject Talmud law into U.S. courts and U.S. society.

**Thousands of Palestinians Murdered by Israel Because of Israel's Political Emasculation of U.S. Politicians Who Fear Being Labeled "Antisemitic."**






21



*See* documentation from *Babylonian Talmud, Tractate Sanhedrin, Folio 64a, Human Sacrifice and Holy Atrocities* attached as **Exhibit 7**.

111.    The Babylonian Talmud also advocates Jews' right to steal from non-Jews, imprison and rape prisoners of war and to murder non-Jews with impunity:

Babylonian Talmud, Tractate Sanhedrin, Folio 57a
https://www.sefaria.org/Sanhedrin.57a.15?lang=bi&with=all&lang2=en

וְעַל הַגֶּזֶל בֶּן נֹחַ נֶהֱרָג? וְהָתַנְיָא: אַגֶּזֶל, גָּנַב וְגָזַל, וְכֵן יְפַת תּוֹאַר, וְכֵן כַּיּוֹצֵא בָּהֶן – גּוֹי בְּגוֹי וְגוֹי בְּיִשְׂרָאֵל אָסוּר, וְיִשְׂרָאֵל בְּגוֹי מוּתָּר. וְאִם אִיתָא, נִיתְנֵי ״חַיָּב״!

The Gemara asks: But is a descendant of Noah executed for robbery? But isn't it taught in a baraita: With regard to the following types of robbery: One who steals or robs, and likewise one who engages in intercourse with a married beautiful woman who was taken as a prisoner of war, and likewise all actions similar to these, if they are done by a gentile to another gentile, or by a gentile to a Jew, the action is prohibited; but if a Jew does so to a gentile, it is permitted?

וְהָא כׇּל הֵיכָא דְּאִית לֵיהּ חִיּוּבָא מִיתְנָא קָתָנֵי, דְּקָתָנֵי רֵישָׁא: עַל שְׁפִיכוּת דָּמִים – גּוֹי בְּגוֹי וְגוֹי בְּיִשְׂרָאֵל חַיָּיב, יִשְׂרָאֵל בְּגוֹי פָּטוּר.

The Gemara challenges: But wherever there is liability for capital punishment, this tanna teaches it; as it is taught in the first clause: With regard to bloodshed, if a gentile murders another gentile, or a gentile murders a Jew, he is liable. If a Jew murders a gentile, he is exempt. Evidently, the term liable is used in the baraita.



112.    In the case *Vanessa Rivas v. Lauren Rose Angelo Seltzer and Matthew Seltzer,* Index No. 151106/2019, plaintiff Vanessa Rivas was subjected to sexual harassment by New York County Assistant District Attorney Lauren Seltzer's husband, Matthew Seltzer, who exercised his Babylonian Talmudic right to engage in acts of unwanted sexual harassment with impunity. When Matthew Seltzer's mother, former New York County Criminal Court Judge Eileen Koretz discovered that Vanessa Rivas contacted the New York City Police Department, she enforced the Babylonian Talmud's doctrine regarding filing criminal complaints against Jews as an act of antisemitism by calling Vanessa Rivas "irresponsible and crazy" and by slandering Ms. Rivas to other nannies as a bad worker. Brooklyn District Attorney's employees' political emasculation based on fear of being labeled antisemitic contributed to the *de facto* enforcement of the Babylonian Talmud doctrine prohibiting the filing of complaints against Jews as an act of antisemitism by not addressing

23

her complaints. *See* complaint *Vanessa Rivas v. Lauren Rose Angelo Seltzer and Matthew Seltzer,* attached as **Exhibit 8**.



113.     The case *Rebecca Klymn v. Monroe County Supreme Court, Unified Court System of the State of New York, Office of Court Administration, Office of the Managing Inspector General for Bias Manners, Cosmas Grant, Ronald Pawelczak, Mary Aufleger, Ann Taddeo, Carolyn Grimaldi, Marge Allen, Amy Field, and Matthew Rosenbaum,* Docket No. 21-cv-00820 details how Jewish Judge Rosenbaum engaged his Babylonian Talmudic right to sexually assault Ms. Klymn by compelling her to fellate him over eighty (80) times between 2005 and 2009. When Ms. Klymn (who is also Jewish) complained, New York State Unified Court System employees' political emasculation based on fear of being labeled antisemitic contributed to the *de facto* enforcement of the Babylonian Talmud doctrine prohibiting the filing of complaints against Jews as an act of antisemitism by not addressing her complaints. *See Rebecca J. Klynm v. Supreme Court, Monroe County, et al,* Docket No. 21-cv-00820 (WDNY), attached as **Exhibit 9**.



114.     The case *Dwayne Parham v. The City of New York, et al,* Index No. 450008/2021, details how Jewish attorneys Michael Finkelstein and Howard Eison engaged their Babylonian Talmudic right to racially denigrate Dwayne Parham and other African American employees by making pejorative references to "fried chicken," "watermelon," and "black people being lazy." They further exacerbated their psychological torture of Dwayne Parham by feigning ignorance regarding the connection between anti-black racism and the pejorative connotations associated with "fried chicken," "watermelon" and "black people being lazy." New York City Law Department's

employees' political emasculation based on fear of being labeled antisemitic and the subsequent *de facto* enforcement of the prohibition against antisemitism contributed to the *de facto* enforcement of the Babylonian Talmud doctrine prohibiting the filing of complaints against Jews as an act of antisemitism by not addressing her complaints. *See* Amended Complaint of Dwayne Parham, attached as **Exhibit 10**.

115.    When Jews in positions of authority or individuals who are under the protection of Jews in positions of authority are defendants in lawsuits in which the plaintiffs are also individuals with great political power, the prohibition against reporting the tortious acts and criminal offenses of lawbreaking Jews as an act of antisemitism is a non-issue. In the case *United States of America v. Real Property titled in the name of Solomon & Peters, Ltd., located at 504 Pleasant Drive, King Farm Estate, Rockville, Maryland, with All Appurtenances, Improvements, and Attachment thereon, and All Leases, Rents, and Profits Derived Therefrom* in which the U.S. Department of Homeland Security took the subject property from Defendant Ehigie Edobor Uzamere based on Special Agent Cynthia Coutts's report identifying him as an individual who laundered money that was embezzled by former Nigerian Bayelsa State governor Solomon Peter Alamieyeseigha there was no issue regarding Defendant Uzamere's past relationship with former Jewish immigration attorneys Allen E. Kaye and Harvey Shapiro. Likewise, in the case *In the Matter of Allen E. Kaye,* Admin. Hearing File No. 3-16984, Defendant Allen E. Kaye was financially sanctioned and forced to pay $90,000 to the Securities and Exchange Commission for having illegally received commissions from clients who engaged in EB-5 investments. The Security and Exchange Commission did not grant any special dispensation based on his being Jewish. *See* documents from the case *United States of America v. Real Property titled in the name of Solomon & Peters, Ltd., located at 504 Pleasant Drive, King Farm Estate, Rockville,*

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Maryland, with All Appurtenances, Improvements, and Attachment thereon, and All Leases, Rents, and Profits Derived Therefrom* attached as **Exhibit 11**. *See* documents from the case *In the Matter of Allen E. Kaye* attached as **Exhibit 12**.

## FACTUAL ALLEGATIONS

116.    I now focus on Defendant Trump's politicization of the Babylonian Talmudic tort of antisemitism and Defendant Cowles' criminalized enforcement of Babylonian Talmudic dogma to violate the Supremacy Clause as it pertains to the enforcement of immigration law, and how the politicization of the religious tort of antisemitism is directly responsible for the endemic corruption that exists within the New York State Unified Court System and the federal court within the Second Circuit that includes the U.S. Court of Appeals for the Second Circuit. My complaint against Defendant Cowles and the named defendants should really be filed as a criminal complaint; however, I cannot do so because Defendant Cowles has availed herself of the U.S. government's unconstitutional politicization of Babylonian Talmudic/Jewish religious law that has effectively prohibited the filing of complaints against lawbreaking Jews as acts of antisemitism. I sent an e-mail to the U.S. Department of Justice to notify its employees of my intention to file a complaint against Eugenia Cowles and other participants resulting from this longstanding seditious phenomenon. *See* e-mail I sent to the U.S. Department of Justice attached as **Exhibit 13**.

117.    In sharp contrast to cases that were prosecuted by Defendant Eugenia Cowles against Jew-controlled corporate entities in which the prohibition against reporting the tortious acts and criminal offenses of lawbreaking Jews as an act of antisemitism was a non-issue, I allege that since September 2008, Eugenia A. Cowles has, in furtherance of the seditious conspiracy to enforce the Babylonian Talmudic/Jewish religious prohibition against reporting the tortious acts

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and criminal offenses of lawbreaking Jews as an act of antisemitism, Defendant Cowles continues to engage in acts of intrinsic and extrinsic fraud in violation of _United States v. Throckmorton, 98 U.S. 61 (1878), Bivens v. Six Unknown Named Agents_, 403 U.S. 388 (1971), and _Chevron Corp. v. Donziger, 833 F.3d 74 (2d Cir. 2016)_, including aiding and abetting crimes of intimidation and law enforcement violence to deprive me of my Fifth Amendment right to due process, and my Seventh Amendment right to a jury trial.

_United States of America v. Cheryl Uzamere,_ Docket No. 1:08-cr-00114-jgm



118.    Starting September 25, 2008, Defendant Cowles forever identified herself to be an anti-black bigot, a bully and a liar by employing the longstanding habit of enforcing the prohibition against reporting lawbreaking Jews to the secular authorities as an act of antisemitism that fellow Jewish bigot Amy Cooper used against African American man Christian Cooper on May 25, 2020 by maliciously aiding and abetting fellow Jewish bigot, Defendant McCarthy to falsely charge me with simple assault (18 U.S.C. § 111(a)(1)) to prevent me from reporting fellow Jews Allen E. Kaye and Harvey Shapiro as an act of antisemitism. On that day, Rachel A. Rothstein McCarthy, former Bar Counsel for the U.S. Department of Homeland Security, maliciously charged me with 18 USC § 111(a), "impeding, intimidating, and interfering with a federal employee (simple assault) after I left angry telephone messages regarding fellow Jewish attorney Allen E. Kaye's facilitation of my husband's act of immigration fraud.

119.    My defense attorney, Elizabeth Mann submitted her Motion to Dismiss in the case _United States of America v. Cheryl Uzamere,_ Docket No. 1:08-cr-00114-jgm that resulted in the dismissal of Defendant Cowles' maliciously filed criminal complaint:

The defendant does not concede that any threat to injure was made in the matter now under consideration by this court. However, even if such a threat were made, the requisite present ability to execute such a threat was wholly lacking in that Ms. Uzamere was located in Brooklyn, New York and Ms. McCarthy was located in Burlington, Vermont. The two individuals were separated by more than 260 miles.

The information as filed is defective in that it omits the essential element of forcible action required for a violation of 18 U.S.C. §111(a)(1). Moreover, Ms. Uzamere has undertaken no forcible actions, she has made no attempt to inflict injury on another person, and she has made no threats to inflict injury upon another person. Even if her remarks could be construed as threatening to inflict injury (a substantial reach), she was without the requisite present ability to act.

120.    During the adjudication of the case *United States of America v. Cheryl Uzamere,* 1:08-CR-001114-jgm, the U.S. Attorney's Office for the District of Vermont provided my defense attorney, Elizabeth Mann with a report from Rachel McCarthy regarding my husband, defendant Ehigie Edobor Uzamere:

Review of Complaint Regarding Attorney Allen E. Kaye by Cheryl Duncan

Uzamere and Duncan married in 10/79 DOB 6/15/55
Duncan filed I-130/485 obo Uzamere 11/79
Uzamere filed for advance parole because father died in 12/79
Duncan withdrew I-130 8/6/80
Duncan called office to indicate she did not want Uzamere deported until she obtained child support and refused to give his address

Meanwhile
USC stepmother filed I-130 for Uzamere 12/77
Approved 12/78
Visa approved 1/80 DOB 12/31/60
***IR2 fraudulently obtained because he was married at the time

Compare fingerprint cards between the two files

121.    Around January 6, 2009, Defendant McCarthy sent me a letter stating:

In your June 9, 2008, complaint, you allege that Alan E. Kaye "colluded with my husband, the now Senator Ehigie Edobor Uzamere to submit a marriage certificate with the fictitious named "Godwin Uzamere": in order to avoid paying child support, and three years later, in order to hide the 2nd marriage that my husband contracted in the United States." The acts that you allege constitute a violation of the Rules of Professional Conduct for Practitioner occurred in the course of representation by an attorney associated with Mr. Kaye in connection with a petition for an immediate relative filed by you with the Immigration and Naturalization Service ("INS") in 1979.

122.    Even after Judge Murtha dismissed the case, Defendant Cowles has continued to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism by depriving me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere. She has continued to aid and abet the New York State judiciary's and the federal judiciary's suppression of the criminal case *United States of America v. Cheryl Uzamere,* 1:08-CR-001114-jgm in which she maliciously prosecuted me for violating 18 U.S.C. § 111(a)(1), a crime I *could not* have committed, and she has continued to aid and abet the suppression of evidence regarding the documentation that I received from Rachel A. McCarthy confirming that Defendant Ehigie Edobor Uzamere is my husband and that he engaged in immigration fraud.

123.    The cases in which Defendant Cowles enforced the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism are as follows:

| | Case Caption | Dkt/Index No. | Years Pending | Website Location |
|---|---|---|---|---|
| 1. | Uzamere v. Uzamere (Divorce) | K-26332/2007 | 07/2007 to 8/2019 | https://bit.ly/4kN6bUV |
| 2. | USA v. Uzamere (DVT) | 1:08-cr-00114 | 09/2008 – 12/2008 | https://bit.ly/4kDb56Q |
| 3. | Uzamere v. Bush (EDNY) | 1:08-cv-00891 | 02/2008 – 08/2009 | https://bit.ly/4mMsBYq |
| 4. | Uzamere v. Kaye, et al (SDNY) | 1:09-cv-01617 | 02/2009 – 02/2009 | https://bit.ly/43FVMDu |
| 5. | Uzamere v. Uzamere (Torts) | K-18012/2009 | 07/2009 – present | https://bit.ly/4juXOfJ |

| | | | | |
|---|---|---|---|---|
| 6. | Uzamere v. Cuomo, et al | 1:11-cv-02831 | 06/2011 – 12/2011 | https://bit.ly/43CUbOP |
| 7. | Uzamere v. USA (DRI) | 1:13-cv-00505 | 07/2013 – 06/2014 | https://bit.ly/3HeUQyD |
| 8. | Uzamere v. Uzamere (Spousal Support) | F-06594/2020 | 03/2020 – present | https://bit.ly/3FxMhON |
| 9. | Uzamere v. State of NY (SDNY) | 1:19-cv-9064 | 09/2019 – 06/2020 | https://bit.ly/451SfSv |
| 10. | Uzamere v. Hochul, et al (NYS) | 901284/2023 | 05/2023 – present | https://bit.ly/4mCCYOc |
| 11. | Uzamere v. State of NY (NYS) | 138655/2023 | 01/2023 – 06/2023 | https://bit.ly/4kJ2dfR |
| 12. | Uzamere v. Uzamere (EDNY) | 1:22-cv-4876 | 07/2022 – 08/2023 | https://bit.ly/4jv1oGH |
| 13. | USA v. Uzamere (EDNY) | Viol. No. 6185448 | 12/2017 – 09/2023 | https://bit.ly/45wRkcQ |
| 14. | People v. Uzamere (SDNY) | 1:24-cv-5449 | 07/2024 – 07/2024 | https://bit.ly/3Z3XOMn |
| 15. | Uzamere v. D. Gregg, et al | 1:25-cv-00024 | 01/2025 – present | https://bit.ly/3SwlEwz |

*Cheryl D. Uzamere v. Ehigie Edobor Uzamere*, K-26332/2007

124.    On June 12, 2009, in compliance with Defendant Cowles' implicit instruction to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism by depriving me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant Sunshine rendered an interim decision regarding my husband, holding that "the opposition raises a genuine issue as to whether or not plaintiff and  defendant were married in

the first instance" after denying my request to subpoena defendant Ehigie Edobor Uzamere's

immigration records.

125.    On May 12, 2009, after my husband and defendant Osato Eugene Uzamere failed

to establish my husband's claim that he is not Ehigie Edobor Uzamere after being given the

opportunity to do so, Defendant Sunshine stated in his decision:

> Today, at 10:35 a.m., defendant was declared in default for failure to appear at the hearing.
> Accordingly, defendant's motion to dismiss this action upon the grounds that he is not the husband of
> the plaintiff is denied in its entirety.  The defendant is the husband in conformity with the parties'
> marriage on November 21, 1979."

*See* Interim Decision and Order and final Decision and Order of Defendant Sunshine attached as

**Exhibit 14**.

126.    On May 12, 2009, in compliance with Defendant Cowles' implicit instruction to

enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the

secular authorities as an act of antisemitism by depriving me of my Fifth Amendment right to

due process by means of discovery/subpoena of the immigration records of Ehigie Edobor

Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my

factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere,

Defendant Sunshine obstinately refused to comply with N.Y. Jud. Law § 432 that requires

"judges or justices of the court of appeals and of the appellate divisions and the appellate terms

of the supreme court… [to] cause to be delivered to the state reporter, without charge, a list of

all decisions rendered by the respective courts, together with copies of such points of counsel

and records and papers on appeal, if practicable, as the state reporter may require."

Cheryl D. Uzamere v. Ehigie Edobor Uzamere (K-18012/2009)

127.    On July 2, 2009, I filed an action for torts against my husband, defendant Ehigie Edobor Uzamere, and Jewish attorneys Allen E. Kaye, Harvey Shapiro and Jack Gladstein. In the complaint, I alleged that my husband and his attorneys Allen E. Kaye, Harvey Shapiro and Jack Gladstein engaged in tortious and criminal acts related to their facilitation of my husband's commission of immigration fraud. In the Notice to Admit, I submitted as exhibits documentation that I received from the U.S. Citizenship and Immigration Service, including the documentation I received from Defendant McCarthy during the malicious prosecution of the case *United States of America v. Cheryl Uzamere,* 1:08-CR-001114-jgm. *See* Verified Complaint, Notice to Admit and Order to Show Cause for Summary and Default judgment, attached as **Exhibit 15**.

128.    On October 28, 2009, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, defendants Allen E. Kaye, Harvey Shapiro and Jack Gladstein submitted falsified affirmations holding "Godwin Uzamere" to be my husband, and Ehigie Edobor Uzamere to be a different person whom I never married.  *See* falsified affirmations of defendants Allen E. Kaye, Harvey Shapiro and Jack Gladstein, Esq., attached as **Exhibit 16**.

129.    On November 3, 2009, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment

**DAILY NEWS** NYDailyNews.com

# Hate-spewing wacko goes into fit in court

## Starts screaming, ripping off clothes

BY SCOTT SHIFREL
DAILY NEWS STAFF WRITER

A WOMAN suing her Nigerian husband for millions started screaming and ripping off her clothes before her arraignment yesterday on charges of threatening to kill a Brooklyn judge.

Cheryl Uzamere, 50, known around courthouse circles for her anti-Semitic screeds against judges and others, was declared mentally unfit and taken to Bellevue Hospital for observation.

"You're going to pay for taking food out of my daughter's mouth," said a twisted message Uzamere left on the answering machine of Justice Jeffrey Sunshine, who is hearing her child support case, according to court documents.

She also told the state inspector general she would "put on a disguise and shoot the judge in the head," a source said.

Uzamere, of East New York, is accused of threatening Sunshine since

March, sending faxes that call him a "stupid son-of-a-bitch and a racist" who should be "jailed and raped."

Uzamere, who represents herself, has already gotten four Brooklyn judges removed from her case since it was filed in 2007.

"Oh, she's a smart person and she really knows how to use the system," said one courthouse source. "She comes in here and files all these papers and threatens people."

Uzamere was in a Criminal Court holding cell when she started stripping and screaming about her "senator" husband in Nigeria loud enough to be heard in the courtroom.

The senator, however, is a cousin of her actual ex-husband, Godwin Uzamere, according to an affidavit he filed in Supreme Court.

"Her obsession with his destruction has taken her mental ailment to a new level which should not be encouraged," Godwin Uzamere's affidavit states.

Cheryl Uzamere was arrested on Tuesday on charges of aggravated harassment and faces a year in jail.

sshifrel@nydailynews.com

*Cheryl Uzamere*

right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere by discriminating against me based on the falsified dissemination of my mental health status, Defendant Sunshine extrajudicially ordered the illegal dissemination of confidential information regarding my now discontinued divorce action in violation of 22 NYCRR 100(3)(B)(8)(11) to the *New York Daily News.* The newspaper article stated: "Cheryl Uzamere, 50, known around courthouse circles for her anti-Semitic screeds against judges and others, was declared mentally unfit and taken to Bellevue Hospital for observation;" referring to privileged statements that I made during judicial proceedings. He also emulated Defendant Cowles' act of malicious prosecution by falsely charging me with violating New York State Penal Law §§ 240.26, 240.30(1) 2nd degree harassment. He coordinated with Defendant Cowles and Defendant Schack to place me in a psychiatric institution as an inpatient to make my complaint regarding Defendants Allen E. Kaye and Harvey Shapiro appear to be unbelievable; and by coordinating with Defendant Cowles and Judge Schack to prevent me from appearing in court based on Defendant Sunshine's falsified dissemination of my mental health status. Defendant Sunshine's

33

false charges against me were eventually dismissed. *See* Dismissal Order in the case *People v Uzamere*, Docket No. 2009KN087992, Judge Schack's Interim Order, Judge Cutrona's Psychiatric Release Denial and Kingsboro Psychiatric Facility's evaluation attached as **Exhibit 17**.

Submission of falsified documents was orchestrated, aided, abetted and protected by Assistant U.S. Attorney Eugenia A. Cowles



**IN THE HIGH COURT OF JUSTICE
EDO STATE OF NIGERIA
IN THE BENIN JUDICIAL DIVISION
HOLDEN IN BENIN**

INDEX NO. 26332/07

CHERYL D. UZAMERE    -    -    -    PLAINTIFF
            V
SENATOR EHIGIE EDOBOR UZAMERE -    -    -    DEFENDANT

**FURTHER COUNTER AFFIDAVIT**

I, Godwin. E. Uzamere, male, farmer, Christian, Nigerian citizen of 18, Eweka, Street, Benin City, do hereby make Oath and state in further response to the Plaintiff's Motion as follows:

1.  That the Defendant in this action Senator Ehigie Edobor Uzamere is my cousin.
2.  That the Plaintiff's claim that she married my cousin in November 1979 is an outrageous and heinous lie. I was the one who married and ran away from her.
3.  When I married the Plaintiff, my intention was to settle in the United States and raise our children including the Plaintiff's child from her previous relationship with a Jamaican. Her unprovoked and incessant irrational outburst prompted me to question her mental stability I left her to protect and preserve my own sanity. I have never regretted that decision.
4.  I have always been ambivalent as regards the paternity of Tara Uzamere who the Plaintiff claims she was two weeks pregnant for when I left her. Children are considered a blessing from God in my family and I have carefully avoided raising issues that would humiliate Tara as far as the circumstances of her birth or paternity is concerned. The Plaintiff is aware that from the time I left her she was at liberty to divorce me. I emphasise that I shall never contest any divorce proceeding she may wish to institute against me.
5.  The Plaintiff riles me as "a broke ass" but has clung to my name after more than 27 years of our separation. She has often threatened to hit my family where it would hurt the most. This action shows I clearly underestimated the limits of her bitterness against me.

6.  I have before now, ignored the Plaintiff's outburst but her claim to be married to my cousin who was not in the United States at the time of our marriage is a new twist to this sad ugly tale.

7.  As indicated by my Application for social security number, and my social security number 129 – 64 – 1205 Godwin E. Uzamere and Ehigie Edobor Uzamere are not the same person. The documents are attached as Exhibits "G$_1$" and "G$_2$".

8.  To the Plaintiff's knowledge, I am disabled from re-entering the United States as indicated in the entry on my passport. A photocopy of which is attached as Exhibit "G$_3$" and she is intent on punishing the Defendant and reaping where she has not sown as a way of paying me back for fleeing the relationship.

9.  The Uzamere family have been supportive of me and also Tara who I have tried not to embarrass over the years on account of the Plaintiff's frail mental health.

10. The Plaintiffs new found obsession with destroying the Defendant is borne out of the fact we are exceptionally close and she mocks us as two sides of the same coin. To her knowledge the Defendant has always treated me with affection and respect. Her obsession with his destruction has taken her mental ailment to a new level which should not be encouraged.

11. It is respectfully submitted that the court should dismiss this action and make such further order as it deems fit in the perculiar circumstance of this case

12. That I depose to this Affidavit bonafide.

Ehigie Uzamere
**Godwin  Uzamere**

**SWORN TO AT THE**
**HIGH COURT REGISTRY,**
**BENIN CITY. THIS** .......... **DAY**
**OF** ................ **2008**

**BEFORE ME**

**COMMISSIONER FOR OATH.**

35









130.    On May 14, 2010, I attended a hearing in which Judge Schack stated in open court that Defendant Uzamere had defaulted, thereby ending Defendants Allen E. Kaye's, Harvey Shapiro's and Jack Gladstein's need to submit documentation regarding my husband's identity; and rendering as an act of extrinsic fraud Judge Schack's use of the falsified affirmations to determine my husband's identity as my husband was declared in default for which my husband never filed a CPLR 5015-based order to show cause. *See* transcript of hearing dated May 14, 2010 as **Exhibit 18**.

131.    On July 13, 2009, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to discriminate against me based on Defendant Sunshine's falsified dissemination of my mental health status, Judge Schack dismissed the case. *See* Decision and Order of Judge Schack attached as **Exhibit 19**.

132.    On January 4, 2011, I filed my brief and appendix with the New York State Supreme Court Appellate Division for the Second Judicial Department. On pages 8 of my appendix, I submitted documentation that I received from Defendant McCarthy during Defendant Cowles' malicious adjudication in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. On November 22, 2011, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to

38

deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, the New York State Supreme Court Appellate Division for the Second Judicial Department dismissed my appeal. *See* appellant's brief, appendix and dismissal attached as **Exhibit 20**.

133.    On July 19, 2024, I filed my Affirmation in Support to vacate the court's dismissal of my Verified Complaint pursuant to CPLR § 5015 for extrinsic fraud. I submitted documentation that I received from Defendant McCarthy during Defendant Cowles' malicious adjudication in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. On August 26, 2024, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Judge Campanelli declined to sign my order to show cause. *See* Affirmation in Support and Order Declining to Sign attached as **Exhibit 21**.

134.    On March 10, 2025, I uploaded my Motion for Leave to Appeal the Second Judicial Department's dismissal of my motion based on extrinsic fraud. I submitted documentation that I received from Defendant McCarthy during Defendant Cowles' malicious adjudication in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. On May 20, 2025, in compliance with Defendant Cowles' implicit instructions to enforce

the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, the Court of Appeals dismissed my appeal. *See* Motion for Leave to Appeal and Decision and Order dismissing my appeal attached as **Exhibit 22**.

*Cheryl D. Uzamere v. Andrew Cuomo, et al,* Docket No. 1:11-cv-2831

135.    On June 10, 2011, I filed my Verified Complaint in the case *Cheryl D. Uzamere v. Andrew Cuomo, et al,* Docket No. 1:11-cv-2831. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious adjudication in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. On June 23, 2011, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant Garaufis dismissed my verified complaint. *See* Verified Complaint, documentation from the U.S. Citizenship and Immigration Service and Judge Garaufis' Order of Dismissal attached as **Exhibit 23**.

136.    Around June 25, 2011, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking

Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to discriminate against me based on Defendant Sunshine's falsified dissemination of my mental health status, three (3) men from the U.S. Marshals Service for the Eastern District of New York banged on my apartment door and told me that "I'm gonna annoy you like you annoyed Judge Garaufis." When I refused to open the door, one of the men banging on the door said "then I'm gonna keep bangin," and for another 1.5 minutes continued to bang on Plaintiff's door. He also asked me if my daughter, Tara was home. When I told them that Tara was home, they left.

137.    On June 10, 2011, I filed my Verified Complaint in the case *Cheryl D. Uzamere v. Andrew Cuomo, et al,* Docket No. 1:11-cv-2831. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. On June 23, 2011, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant Garaufis dismissed my verified complaint, stating that "Plaintiff has inundated the court with harassing faxes and phone

call," an unsubstantiated accusation regarding privileged statements I made during judicial proceedings. *See* Verified Complaint, documentation from the U.S. Citizenship and Immigration Service and Judge Garaufis' Order of Dismissal attached as **Exhibit 23**.

138.   On July 12, 2011, I filed my Appellant's Brief in the case *Cheryl D. Uzamere v. Andrew Cuomo, et al,* Docket No. 11-2713. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious adjudication in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm.

139.   Around July 16, 2011, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to discriminate against me based on Defendant Sunshine's falsified dissemination of my mental health status, social worker Bridgette Davis called to tell me that I would be hospitalized because employees of the U.S. Marshal Service told her that I threatened judges and employees at CMS, something that I never did.   I recorded the phone call and uploaded it to https://www.thecrimesofsenatoruzamere.net/audio_files/davisconversation.mp3.

140.   By the end of June/beginning of July 2011, Judge Garaufis extrajudicially authorized federal law enforcement agents to contact Cablevision to obtain non-content information regarding telephone calls I made; and then ordered employees of the U.S. Marshal Service and the U.S. Department of Homeland Security to fabricate a false story that I made

threatening telephone calls to employees of the Center for Medicare and Medicaid Services (CMS).

141.    On August 18, 2011, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to discriminate against me based on Defendant Sunshine's falsified dissemination of my mental health status, Defendant Denis McGowan sent a falsified letter to the New York City Health and Hospitals Corporation's East New York Diagnostic and Treatment Center's Assertive Community Treatment Team. The letter stated:

"On July 06, 2011, Federal Protective Service (FPS) was notified of a telephonic threat made by CHERYL UZAMERE to the Centers for Medicare & Medicaid call center. The threat consisted of HER stating: since SHE did not get the job, SHE was going to "COME DOWN THERE AND KILL EVERYBODY. Since FPS has investigated UZAMERE multiple times for similar behavior, we are well aware of HER mental health history. Based on that information, a referral was made to LifeNet for mental health intervention on July 07 2011. Subsequently, UZAMERE's Intensive Case Manager (ICM) Bridgett Davis of the New York State Office of Mental Health has advised that UZAMERE's treatment has been transferred to the Assertive Community Treatment (ACT) program. We were informed that CHERYL D. UZAMERE is being treated as a patient by your program and we would like to keep you abreast of this situation as it evolves. We also request that we be notified as HER status changes in particular any change from in-patient to out-patient treatment and in the case of the latter any refusal of treatment. In addition, please notify FPS of any relapses or deterioration of HER condition that may pose a risk to life or property."

*See* letter from Denis P. McGowan, U.S. Department of Homeland Security attached as **Exhibit 24**.

142.    On December 20, 2011, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment

right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, unknown judges of the U.S. Court of Appeals for the Second Circuit dismissed my appeal. *See* Appellant's Brief, Appendix and Order of Dismissal attached as **Exhibit 25**.

143.    On February 26, 2012, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to discriminate against me based on Defendant Sunshine's falsified dissemination of my mental health status, Samuel Sarpong and the Kings County Hospital's ACT Team prepared a psychiatric treatment plan. Under the title "Alerts," the treatment plan states:

> ". . . H/O threats to judges and Center for Medicaid and Medicare, patient is being monitored by Homeland Security." Under the title "Discharge Plan," it says "Patient is not being considered for discharge at this time, she was transferred to the program 6 months ago after she made a threat to the Medicare and Medicaid call center and is being monitored by the U.S. Department of Homeland Security." Under the title "Patient/Family Statement," it says that "She reported not being aware of being monitored by Homeland Security. . ."

*See* Plaintiff's psychiatric treatment plan from the East New York Diagnostic and Treatment Center's Assertive Community Treatment Team, attached as **Exhibit 26**.

144.    On or around January 30, 2013, in response to my FOIA request, I received a letter from the Centers for Medicare and Medicaid Services. The letter stated:

Our records show that you placed calls to 1-800-MEDICARE on the dates and times listed below (all times Central). We can confirm that none of these calls contained threatening comments:

| | | |
|---|---|---|
| June 14, 2010, 10:38 AM; | July 18, 2012, 11:14 AM; | July 27, 2012, 5:48 PM; |
| June 1, 2011, 7:39 AM; | July 19, 2012, 5:02 PM; | September 9, 2012, 4:39 PM; |
| July 8, 2011, 12:56 PM; | July 23, 2012, 2:51 PM; | October 18, 2012, 2:26 PM; |
| May 18, 2012, 11:17 AM, | July 24, 2012, 5:21 PM; | November 16, 2012 7:38 PM; |
| May 18, 2012 1:29 PM, | July 24, 2012, 5:43 PM; | November 26, 2012, 1:46 PM; |
| May 18, 2012, 3:51 PM; | July 24, 2012, 5:47 PM; | December 12, 2012, 11:13AM; |
| July 2, 2012, 10:47 AM; | July 24, 2012, 6:05 PM; | December 13, 2012,4:29 AM; |
| July 10, 2012, 2:24 PM; | July 24, 2012, 9:56 PM; | December 13, 2012, 5:05 AM; |
| July 17, 2012, 1:09 PM; | July 26, 2012, 9:39 PM; | December 13, 2012, 5:09 AM. |

145.    In January 2013, I had a telephone conversation with an employee of the Centers for Medicare and Medicaid Services and spoke with a staff member who confirmed that I did not threaten anyone.  I recorded the conversation and uploaded it to my website at https://www.thecrimesofsenatoruzamere.net/audio_files/conversationwithcms1.mp3    (please advance to 0:22 minutes). *See* CMS correspondence to Robert Moore attached as **Exhibit 27**.

*United States of America v. Cheryl D. Uzamere,* Violation No. 6185448



146.    On December 19, 2017, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment

45

right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to emulate Defendant Cowles' act of malicious prosecution by falsely charging me with a crime that I did not commit, D. Gregg, Shield 298 of the U.S. Department of Homeland Security and "John Doe"/"Jane Doe" of the Social Security Administration falsely charged me with violating 41 CFR 102-74.385 and 41 CFR 102-74.390(a) in the case *United States of America v. Cheryl Uzamere,* Violation Nos. 6185447 and 6185448 when I came to the Social Security Administration's district office to complain that the Affinity Federal Credit Union embezzled my disability payments. *See* criminal summonses attached as **Exhibit 28**.

147.    On March 20, 2018, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to effect of conviction and incarceration based on the false charges, defendant Judge Steve Tiscione dismissed the part of the criminal complaint that referenced Violation No. 6185447, but granted a continuance of Violation No. 6185448. *See* CVB notices for Viol. No. 6185447 (dismissed) and Viol. No. 6185448 (granted continuance) attached as **Exhibit 29**.

148.    On March 27, 2018 and March 31, 2018, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of

46

Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to effect a conviction and incarceration based on the false charges, Defendant Garaufis extrajudicially ordered the court's non-judicial staff to destroy the documentation that I filed with the court. The destroyed documents included documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious adjudication in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. *See* destroyed documentation attached as **Exhibit 30**.

149.    On April 3, 2018, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, and to effect a conviction and incarceration based on the false charges, a clerk of court gave me a falsified dispositional letter stating that the criminal case referencing Violation No. 6185448 was dismissed after Defendant Tiscione engaged in a staged "hearing" to dupe me into believing that the charges against me were dismissed. *See* falsified Letter of Dismissal attached as **Exhibit 31**.

150.    On September 13, 2023, I sent an e-mail to attorney Raymond L. Colon to which I attached my motion to transfer the case and for assistance from a CJA attorney. *See* e-mail to Raymond L. Colon dated September 13, 2023, attached as **Exhibit 32**.

151.   On September 19, 2023, six (6) days after I notified my former defense attorney that the criminal case *United States of America v. Cheryl Uzamere,* Viol. 6185448 was still pending against me, Defendant Raymond Reyes granted the U.S. Department of Homeland Security's request and dismissed the case five (5) years and nine (9) months after filing the false police report against me. *See* CVB dismissal documentation attached as **Exhibit 33**.

*Cheryl D. Uzamere v. The State of New York,* Docket No. 1:19-cv-9064

152.   On September 27, 2019, I filed my Verified Complaint in the case *Cheryl D. Uzamere v. The State of New York,* Docket No. 1:19-cv-9064. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm, and documentation from the malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Viol. No. 6185448 that I did not know was still pending against me, but that Defendant McMahon knew was still pending against me, and knew was pending against me without assigned counsel. On October 15, 2019, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant McMahon dismissed my Verified Complaint. On October 22, 2019, Defendant Colleen McMahon issued a bar order, preventing me from filing further actions with the court, including pending actions regarding the

48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

criminal case that was pending against me without my knowledge. *See* Verified Complaint attached as **Exhibit 34**. Also, *see* Order of Dismissal and Bar Order attached as **Exhibit 35**.

153.    On December 23, 2019, I filed my Appellant's Brief and Appendix in the case *Cheryl D. Uzamere v. The State of New York,* Docket No. 19-3825. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm, and documentation from the malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Viol. No. 6185448 that I did not know was still pending against me, but that U.S. Court of Appeals defendants, judges Richard J. Sullivan, Joseph F. Bianco, and Susan L. Carney knew was still pending against me, and knew was pending against me without assigned counsel. On October 15, 2019, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant McMahon dismissed my Verified Complaint. On April 10, 2020, defendants Richard J. Sullivan, Joseph F. Bianco, and Susan L. Carney dismissed my appeal while knowing that the criminal case *United States of America v. Cheryl Uzamere,* Viol. No. 6185448 was still secretly pending against me without assigned counsel. *See* Appellant's Brief and Appendix attached as **Exhibit 36**. Also, *see* U.S. Court of Appeals' dismissal attached as **Exhibit 37**.

*Cheryl D. Uzamere v. Ehigie Edobor Uzamere,* Docket No, F-06594/2020

154.    On March 6, 2020, I filed my Petition for spousal support. On March 31, 2021, defendant, Kings County Family Court Support Magistrate Adele Alexis Harris heard my petition. She granted a temporary order of spousal support based on the nonappearance of defendant, my husband, defendant Ehigie Edobor Uzamere. Defendant Uzamere was given thirty-five (35) days to vacate Family Court's order pursuant to CPLR § 5015(a)(1), excusable. *See* Petition for Spousal Support, Transcript of Hearing, and Interim Order of Spousal Support attached as **Exhibit 38**.

155.    On May 27, 2021, twenty-one (21) days after May 6, 2021, the date filing of an Order to Show Cause to Vacate pursuant to CPLR § 5015(a)(1) became untimely, defendant Austin I. Idehen made an appearance on behalf of Defendant Uzamere. On August 25, 2021,  in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant Idehen filed a falsified Notice of Motion to Dismiss pursuant to CPLR § 3211(a)(1)(7), ignoring the temporary order of spousal support, and treating my Petition for spousal support as never having been adjudicated by Kings County Family Court. On June 27, 2022, Defendant Harris dismissed her Temporary Order of Spousal Support. *See* Notice of Appearance, Motion to Dismiss and Findings of Fact attached as **Exhibit 39**.

156.    On July 5, 2022 I filed my Specific Objection to Magistrate's Dismissal. I submitted documentation that I received from the U.S. Citizenship and Immigration Service,

including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. In compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, defendant Kings County Family Court judge Jacqueline D. Williams affirmed Defendant Harris' dismissal of my petition for spousal support, ignoring the untimely, falsified Defendant Idehen's Motion to Dismiss pursuant to CPLR § 3211(a)(1)(7), and ignoring the Temporary Order of Spousal Support by treating my Petition for Spousal Support as if it had never having been adjudicated by Kings County Family Court. *See* Specific Objection to Magistrate's Dismissal and Defendant Williams' Order of Dismissal attached as **Exhibit 40**.

157.    On August 12, 2024, I filed the correct version of my Appellant's Brief. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. I participated in an oral argument of my appeal on June 5, 2025. My oral argument was videorecorded as uploaded to https://www.youtube.com/watch?v=ywsHRmua5yw&t=902s (@ 39:27 minutes). A decision is pending. *See* Appellant's Brief and Record on Appeal pages 56 – 87 attached as **Exhibit 41**.

*Cheryl D. Uzamere v. Ehigie Edobor Uzamere, et al,* Docket No. 1:22-cv-4876

158.    On July 12, 2022, I filed my Complaint in the case *Cheryl D. Uzamere v. Ehigie Edobor Uzamere, et al* Docket No. 1:22-cv-4876. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm, and documentation from the malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Viol. No. 6185448 that I did not know was still pending against me, but that defendants judges Lois Bloom and La Shann D'Arcy Hall knew was still pending against me, and knew was pending against me without assigned counsel. On September 23, 2022, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant La Shann D'Arcy Hall dismissed my Verified Complaint. In her Memorandum and Order, she stated: "The Court takes further notice that Plaintiff has inundated the Court with voluminous submissions which has burdened the Court's resources and that she has, at times, engaged in harassing, and sometimes antisemitic telephone calls to the Clerk's Office and to chambers. *See* Verified Complaint attached as **Exhibit 42**. Also, *see* Memorandum and Bar attached as **Exhibit 43**.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Cheryl D. Uzamere v. The State of New York,* Claim No. 138267/22

159.    On October 5, 2022, I filed a claim in the case *Cheryl D. Uzamere v. The State of New York,* Claim No. 138267/2022.  On October 11, 2022 I also submitted an emergency motion to authorize subpoenas along with I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. On April 24, 2023, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant McCarthy dismissed my Claim. *See* Claim, Emergency Motion attached as **Exhibit 44**. Also, *see* Decision and Order of Defendant McCarthy attached as **Exhibit 45**.

*Cheryl D. Uzamere v. Kathy Hochul, et al,* Index No. 901284/2023

160.    On May 20, 2023, I filed my Amended Verified Complaint in the case *Cheryl D. Uzamere v. Kathy Hochul, et al,* Index No. 901284/2023.  I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm, On October 15, 2019, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act

53

of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant McMahon dismissed my Verified Complaint. On May 31, 2023, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, defendant Albany Count Supreme Court Judge Mark L. Powers dismissed my complaint. In his decision he states: "Plaintiff has demonstrated that she will continue to infinitely file her unsubstantiated and deeply troubling anti-Semitic submissions." *See* Amended Verified Complaint attached as **Exhibit 46**. Also, *see* Decision and Order of Defendant Powers attached as **Exhibit 47**.

161.    On October 28, 2024, I filed my Appellant's Brief Amended Verified Complaint in the case *Cheryl D. Uzamere v. Kathy Hochul, et al,* Index No. 901284/2023.  I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm. I participated in an oral argument of my appeal on May 29, 2025 I. A decision is pending. *See* Appellant's Brief and Record attached as **Exhibit 48**.

*Cheryl D. Uzamere v. D. Gregg, et al,* Docket No. 1:25-cv-00024

162.    On February 10, 2025, I filed my Amended Complaint in the case *Cheryl D. Uzamere v. D. Gregg, et al,* Docket No. 1:25-cv-00024.  I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm, and documentation from the malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Viol. No. 6185448. On March 31, 2025, defendant, federal just Paul J. Evangelista dismissed my Amended Complaint. In his dismissal, he stated:

> The Court takes further notice that Plaintiff has inundated the Court with voluminous submissions which has burdened the Court's resources and that she has, at times, engaged in harassing, and sometimes antisemitic telephone calls to the Clerk's Office and to chambers.

> The undersigned further wishes to make the District Judge aware that the Clerk's office has informed the undersigned that plaintiff has engaged in daily harassing phone calls/electronic help-desk communications to this Court's clerk's office, where plaintiff often raises her voice; spews abusive, racist comments toward the recipients of her calls; and threatens lawsuits against court employees because she disagrees with the amount of time it takes for the Court to address her filings. When advised that the Court is aware of her filings and that they will be addressed in due course – which is in line with the Court's large volume of cases, including many that were filed before plaintiff's – plaintiff accused the nonjudicial staff of conspiring to "hide" her filings from the judges. The undersigned observes that plaintiff has previously engaged in similar conduct toward clerk's office employees in at least one prior case, with the Eastern District of New York noting that, in addition to "engag[ing], at times, in harassing, and sometimes antisemitic telephone calls to the Clerk's Office and to chambers[,]" plaintiff even "attempted to contact judicial staff outside of the Courthouse." *Uzamere*

*See* Amended Complaint attached as **Exhibit 49**. Also, *see* Report-Recommendation and Order attached as **Exhibit 50**.

163.    On April 12, 2025, I filed my Objections to the Magistrate's Dismissal in the case *Cheryl D. Uzamere v. D. Gregg, et al,* Docket No. 1:25-cv-00024.  Documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm in contained within the

body of the objections. On April 17, 2025, in compliance with Defendant Cowles' implicit instructions to enforce the Babylonian Talmud's prohibition regarding reporting lawbreaking Jews to the secular authorities as an act of antisemitism to deprive me of my Fifth Amendment right to due process by means of discovery/subpoena of the immigration records of Ehigie Edobor Uzamere, and my Seventh Amendment right to a trial by jury to determine the veracity of my factual allegations concerning Allen E. Kaye, Harvey Shapiro and Ehigie Edobor Uzamere, Defendant Brindisi dismissed my Objections to the Magistrate's Dismissal. In Defendant Brindisi's decision he said: As noted in the R&R, plaintiff engaged in similar conduct toward clerk's office employees in the Eastern District of New York. *Id*. There, plaintiff, "at times, engaged in harassing, and sometimes antisemitic telephone calls to the Clerk's Office and to chambers" and "attempted to contact judicial staff outside of the Courthouse." *See* Objections to the Magistrate's Dismissal attached as **Exhibit 51**. Also, *see* D Order on Report and Recommendation attached as **Exhibit 52**.

164.    On May 21, 2025, I filed my Declaration to request the removal of my case from the XAC calendar, and for an extension of time to file my Appellant's Brief in the case *Cheryl D. Uzamere v. D. Gregg, et al,* Docket No. 25-1213. I submitted documentation that I received from the U.S. Citizenship and Immigration Service, including documentation that I received from Defendant McCarthy during Defendant Cowles' malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Docket No. 1:08-cr-00114-jgm, and documentation from the malicious prosecution in the case *United States of America v. Cheryl Uzamere,* Viol. No. 6185448. The U.S. Court of Appeals granted me until August 22, 2025 to file my brief.

**LEGAL ANALYSIS**

<u>Viewpoint Discrimination is Unconstitutional</u>

165.    The International Holocaust Remembrance Alliance says the following regarding antisemitism:

> "Antisemitism is a certain *perception* of Jews, which may be expressed as hatred toward Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities." (emphasis added)

166.    To the untrained eye, the IHRA's dissemination of its description of antisemitism is an act of "righteousness" designed to moralize how the public interacts with members of the (Ashkenazi) Jewish community by ensuring that the public entertains positive thoughts regarding both individual Jews and the Jewish community as a whole. To the trained eye, however, the IHRA's dissemination of its description of antisemitism is a one-sided, self-serving, *ultra vires* control of public thought to compel a mindset that is conducive to acceptance and love of (Ashkenazi) Jews based on an event that destroyed the lives of both Jews and non-Jews alike. In a word, the IHRA's dissemination of its definition of antisemitism is *grooming.* The IHRA's pseudo-legalization of the definition of antisemitism clearly violates U.S. Supreme Court mandate in the case *Matal v. Tam*, 137 S. Ct. 1744, 198 L. Ed. 2d 366 (2017).

167.    In the U.S. Supreme Court case *Matal v. Tam*, 137 S. Ct. 1744, 198 L. Ed. 2d 366 (2017), the Honorable Samuel A. Alito expressed the Court's opinion regarding the enforcement of the Lanham Act's Disparagement Clause against an Asian American rock band that applied for trademark registration under the band's name "The Slants." Mr. Justice Alito delivered the opinion of the Court, concluding:

57

The disparagement clause applies to marks that disparage the members of a racial or ethnic group.  Tam's view, that the clause applies only to natural or juristic persons, is refuted by the plain terms of the clause, which uses the word "persons."  A mark that disparages a "substantial" percentage of the members of a racial or ethnic group necessarily disparages many "persons," namely, members of that group. Tam's narrow reading also clashes with the breadth of the disparagement clause, which by its terms applies not just to "persons," but also to "institutions" and "beliefs."

…The disparagement clause denies registration to any mark that is offensive to a substantial percentage of the members of any group. That is viewpoint discrimination in the sense relevant here: Giving offense is a viewpoint.  The "public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."  *Street v. New York,* 394 U. S. 576, 592. Pp. 20–23.

First Amendment's Free Exercise Clause Incorporates
the Due Process Clause of the Fourteenth Amendment

168.    In the U.S. Supreme Court case *Newton Cantwell, et al v. State of Connecticut*, 310 U.S. 296, 60 S. Ct. 900, Newton Cantwell and his sons, Jehovah's Witnesses, were proselytizing door-to-door in a predominantly Catholic neighborhood in Connecticut, distributing religious literature and playing records with messages critical of Catholicism. The criticism included calling the Catholic Church an "instrument of Satan" that "robs the people of their money and destroys their peace of mind and freedom of action. This angered two pedestrians, and the Cantwells were arrested and convicted for violating a state law requiring a license for soliciting funds for religious causes and for inciting a breach of the peace. The Supreme Court unanimously reversed the convictions, recognizing the actions as protected religious speech under the First Amendment. In its unanimous decision, the Supreme Court held:

A state statute which forbids any person to solicit money or valuables for any alleged religious cause, unless a certificate therefor shall first have been procured from a designated official, who is required to determine whether such cause is a religious one and who may withhold his approval if he determines that it is not, is a previous restraint upon the free exercise of religion, and a deprivation of liberty without due process of law in violation of the Fourteenth Amendment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Government Cannot Regulate or Establish a Religion

169.    In the U.S. Supreme Court case *Engel v. Vitale,* 370 U.S. 421 (1962), New York State law required public schools to open each day with the Pledge of Allegiance and a nondenominational prayer in which the students recognized their dependence upon God. The law allowed students to absent themselves from this activity if they found it objectionable. A parent sued on behalf of his child, arguing that the law violated the Establishment Clause of the First Amendment, as made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Mr. Justice Black delivered the opinion of the Court, stating:

> It is true that New York's establishment of its Regents' prayer as an officially approved religious doctrine of that State does not amount to a total establishment of one particular religious sect to the exclusion of all others -- that, indeed, the governmental endorsement of that prayer seems relatively insignificant when compared to the governmental encroachments upon religion which were commonplace 200 years ago. To those who may subscribe to the view that, because the Regents' official prayer is so brief and general there can be no danger to religious freedom in its governmental establishment, however, it may be appropriate to say in the words of James Madison, the author of the First Amendment:

> "[I]t is proper to take alarm at the first experiment on our liberties. . . . Who does not see that the same authority which can establish Christianity, in exclusion of all other Religions, may establish with the same ease any particular sect of Christians, in exclusion of all other Sects? That the same authority which can force a citizen to contribute three pence only of his property for the support of any one establishment may force him to conform to any other establishment in all cases whatsoever?

The Government Cannot Enforce Laws that Abridge
the Privileges or Immunities of U.S. Citizens

170.    Title  18 of the United States Code Section 242, as a statutory extension of the Fourteenth Amendment does not create any new legal rights, but it allows individuals to sue when existing federal constitutional rights are violated "under color of law." This is true when an individual abrogates the Fourteenth Amendment's Equal Protection Clause by promulgating laws that abridge the rights of a specific group of individuals that are not abridged against individuals who are similarly situated. The Fourteenth Amendment holds that:

59

*No State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws (emphasis added).

171. The case *Eisenstadt v. Baird,* 405 U.S. 438 (1972) was a landmark decision in which the U.S. Supreme Court established the right of unmarried people to possess contraception on the same basis as married couples. The Supreme Court struck down a Massachusetts law prohibiting the distribution of contraceptives to unmarried people for the purpose of preventing pregnancy, ruling that it violated the Equal Protection Clause of the U.S. Constitution:

If, as the Court of Appeals held, the statute under which appellee was convicted is not a health measure, appellee may not be prevented, because he was not an authorized distributor, from attacking the statute in its alleged discriminatory application to potential distributees. Appellee, furthermore, has standing to assert the rights of unmarried persons denied access to contraceptives because their ability to obtain them will be materially impaired by enforcement of the statute. Cf. *Griswold*, supra; *Barrows v. Jackson,* 346 U. S. 249. Pp. 405 U. S. 443-446.

By providing dissimilar treatment for married and unmarried persons who are similarly situated, the statute violates the Equal Protection Clause of the Fourteenth Amendment. Pp. 405 U. S. 446-455.

172. In the U.S. Supreme Court case *Engel v. Vitale,* 370 U.S. 421 (1962), the Court properly poses the question: "Who does not see that the same authority which can establish Christianity, in exclusion of all other Religions, may establish with the same ease any particular sect… in exclusion of all other Sects?" The specificity of acts that Defendant Trump ascribed to Executive Order 13899 and Executive Order 14188 are inherently because the interpretation and enforcement of the subject directives can and have been civil and criminally misapplied by the very individuals who should know better: Jewish attorneys and Jewish judges. I reiterate the following cases as proof of the inherent danger in Defendant Trump's promulgation of Executive Order 13899 and Executive Order 14188 that politicizes the religious tort of antisemitism, and for which the defendants engaged in acts of law

enforcement intimidation and law enforcement violence in violation of 18 U.S.C. § 242: (a) Defendant Cowles' filing of false criminal charges and threat of arrest in the case *United States of America,* Docket No. 1:08-cr-00114-jgm, attached as **Exhibit 55**; (b) Defendant Sunshine's filing of false criminal charges, actual arrest and inpatient psychiatric bondage in the case *People v. Cheryl Uzamere,* Docket No. 2009KN087992 attached as **Exhibit 56**; (c) Defendant Garaufis' extrajudicially dissemination of false criminal charges during the adjudication of the case *Cheryl D. Uzamere v. Andrew Cuomo, et al,* Docket No. 1:11-cv-2831 attached as **Exhibit 57**; (d) Defendant Gregg's filing of false criminal charges that commenced the malicious prosecution and adjudication of the case *United States of America v. Cheryl D. Uzamere,* Viol. 6185448 attached as **Exhibit 58**; and Defendant Kramer's false filing in the case *People v. Uzamere* (desk appearance ticket only, docket not assigned) attached as **Exhibit 59**.

### AS AND FOR A FIRST CAUSE OF ACTION

**Violation of First Amendment Freedom of Speech Clause (*ultra vires*)**

173.    I restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

174.    Defendants had a duty to enforce the mandate in the U.S. Supreme Court case, *Matal v. Tam,* 582 U.S. 218 (2017) which upholds the First Amendment right of freedom of expression that includes hate speech:  "The disparagement clause denies registration to any mark that is offensive to a substantial percentage of the members of any group. That is viewpoint discrimination in the sense relevant here: Giving offense is a viewpoint.  The "public expression of ideas may not be prohibited merely because the ideas themselves are offensive to some of their hearers."  *Street v. New York,* 394 U. S. 576, 592.

175.    Defendants' duty to enforce my right to free speech especially extends to privileged speech I made during judicial proceedings. The U.S. Supreme Court case *Imbler v. Pachtman*, 424 U.S. 409 (1976) enforces the First Amendment right to free speech by recognizing the absolute privilege of statements made during judicial proceedings: "In the law of defamation, a concern for the airing of all evidence has resulted in an absolute privilege for any courtroom statement relevant to the subject matter of the proceeding. In the case of lawyers, the privilege extends to their briefs and pleadings as well…"Absolute privilege has been conceded on obvious grounds of public policy to [e]nsure freedom of speech where it is essential that freedom of speech should exist. It is essential to the ends of justice that all persons participating in judicial proceedings …should enjoy freedom of speech in the discharge of their public duties or in pursuing their rights, without fear of consequences."

176.    President Trump failed in his duty to enforce my right to free speech by promulgating Executive Order 13899 and Executive Order 14188, executive orders that espouse the IHRA's definition of antisemitism as "Antisemitism is a certain *perception* of Jews, which may be expressed as hatred toward Jews;" thereby ignoring the mandate in the case *Matal v. Tam,* 582 U.S. 218 (2017) which upholds the First Amendment right of freedom of expression that includes hate speech that applies not just to "persons," but also to "institutions" and "beliefs." A "belief" is a "perception."

177.    President Trump failed in his duty to enforce my right to free speech by aiding and abetting the predatorial use of the politicized, *de facto* enforcement of the religious tort of antisemitism by Jewish leadership, as established in the following cases: (a) *Haim Zuckerman v. Yeshiva & Mesivta Bais Yisroel, Rabbi Avraham Leizerowitz and Avrohom Mondrowitz,* Index 512187/2020 in which Ashkenazi Jewish pedophile Avrohom Mondrowitz

raped over 300 children, both Jewish and Italian-American; (b) *Vanessa Rivas v. Lauren Rose Angelo Seltzer and Matthew Seltzer,* Index No. 151106/2019, in which Ashkenazi Jewish Judge Eileen Koretz harassed victim Vanessa Rivas for filing a complaint with the New York City Police Department because former Judge Koretz's son, Matthew Seltzer used a spy cam to make videos of Ms. Rivas taking showers; and (c) *Rebecca Klymn v. Monroe County Supreme Court, Unified Court System of the State of New York, Office of Court Administration, Office of the Managing Inspector General for Bias Manners, Cosmas Grant, Ronald Pawelczak, Mary Aufleger, Ann Taddeo, Carolyn Grimaldi, Marge Allen, Amy Field, and Matthew Rosenbaum,* Docket No. 21-cv-00820. In each of these cases, the victims' constitutional right to due process of law and equal protection of the law was violated because of Jewish leadership's political emasculation of non-Jews based on their fear of being publicly identified as antisemitic; and based on their fear of the subsequent unending torture by members of Jewish leadership, including acts of law enforcement intimidation and violence that, while not having the same level of sexual savagery, has the same intent that Israel's Jewish leadership have when they employ the IDF to terrorize helpless Palestinians.

178.    Defendants, all of whom are officers of the court failed in their duty to enforce my right to freedom of speech in, *of all places,* courthouses where their claims of antisemitism refer only to privileged statements I have made during judicial proceedings regarding Jews who have violated my constitutional rights. The defendants, at the behest of Jewish leadership, continue to enforce the Babylonian Talmudic *Law of Moser* which prohibits individuals from reporting tortious and criminal acts committed by Jews to the secular authorities, and which views reporting lawbreaking Jews to the secular authority an action of antisemitism.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

179.    President Trump's failure to enforce my constitutional rights based on Executive Order 13899's and Executive Order 14188's politicization of the religious tort of antisemitism and its extension, Law of Moser, which treats the filing of civil and criminal complaints against Jews as an act of antisemitism constitutes the commission of the following criminal offenses: (a) 18 U.S.C. § 2, aiding and abetting; (b) 18 U.S.C. § 2384, seditious conspiracy; (c) 18 U.S.C. § 1512 and (d) various RICO-predicate crimes that include, but are not limited to 18 U.S.C. § 1503, obstruction of justice and 18 U.S.C. § 1512, tampering with a witness, victim or informant. The subject criminal offenses are crimes that are still being committed by the defendants that have deprived me of my constitutional rights that, while appearing to enforced under the color of federal law, are in actuality, enforced based on the enforcement of the religious tort of antisemitism, and its extension, Law of Moser, in violation of my constitutional right to make privileged statements during judicial proceedings relating to their interference with my Fifth Amendment right to due process by way of authorizing a subpoena to acquire Defendant Uzamere's records based on his violation of immigration law, and my Seventh Amendment right to a jury trial to prevent me from filing further complaints against Jewish immigration attorney Allen E. Kaye (deceased) and Harvey Shapiro based on the enforcement of the Babylonian Talmud doctrine, Law of Moser, considered by Jewish leadership to be an act of antisemitism.

64

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**AS AND FOR A SECOND CAUSE OF ACTION**

**Violation of the First Amendment's Free Exercise Clause (*ultra vires*)**

180.    I restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

181.    Defendants had a duty to enforce the mandate in the U.S. Supreme Court case *Newton Cantwell, et al v. State of Connecticut*, 310 U.S. 296, 60 S. Ct. 900 that affirmed the right of Jehovah's Witness Newton Cantwell to distribute messages that were critical of Catholicism. The Supreme Court's decision held that a governmental agency's forbidding of any

person to solicit money or valuables for any alleged religious cause to determine whether a

religious one and withholds it approval if he determines that it is not, is a previous restraint upon

the free exercise of religion.

182.    Defendants had a duty to enforce the free exercise of my right to expose

Babylonian Talmudic Judaism as false, and not based in the Bible based on its espousal of the

hatred and religious defamation of people of black African descent:

> Babylonian Talmud, Tractate Sanhedrin, Folio 108b
> https://www.sefaria.org/Sanhedrin.108b.15?lang=bi&with=all&lang2=en
>
> תָּנוּ רַבָּנַן: שְׁלֹשָׁה שִׁמְּשׁוּ בַּתֵּיבָה, וְכוּלָּם לָקוּ. כֶּלֶב וְעוֹרֵב וְחָם. כֶּלֶב נִקְשַׁר, עוֹרֵב רָק, חָם לָקָה בְּעוֹרוֹ.
>
> The Sages taught: Three violated that directive and engaged in intercourse while in the ark, and all of them were punished for doing so. They are: The dog, and the raven, and Ham, son of Noah. The dog was punished in that it is bound; the raven was punished in that it spits, and Ham was afflicted in that his skin turned black.





183.    Defendants had a duty to enforce the free exercise of my religion as one of

Jehovah's Witnesses, that holds that Jehovah's law to Israel prescribed the death penalty for

anyone, even an alien resident, who gave his offspring to Molech. (Le 20:2-5); and that

nonetheless, apostate Israelites, both in the kingdom of Judah and in the ten-tribe kingdom,

adopted false religion passed their offspring through the fire.—2Ki 17:17, 18; Eze 23:4, 36-39.

**טז** וַיַּעַזְבוּ, אֶת-כָּל-מִצְוֹת יְהוָה אֱלֹהֵיהֶם, וַיַּעֲשׂוּ לָהֶם מַסֵּכָה, שְׁנַיִם שְׁנֵי עֲגָלִים; וַיַּעֲשׂוּ
**יז** וַיַּעֲבִירוּ אֶת-בְּנֵיהֶם וְאֶת- אֲשֵׁירָה, וַיִּשְׁתַּחֲווּ לְכָל-צְבָא הַשָּׁמַיִם, וַיַּעַבְדוּ, אֶת-הַבָּעַל.
בְנֹתֵיהֶם, בָּאֵשׁ, וַיִּקְסְמוּ קְסָמִים, וַיְנַחֵשׁוּ; וַיִּתְמַכְּרוּ, לַעֲשׂוֹת הָרַע בְּעֵינֵי יְהוָה--לְהַכְעִיסוֹ.

And they kept leaving all the commandments of Jehovah their God and proceeded to make for
themselves molten statues, two calves, and to make a sacred pole, and they began to bow down to
all the army of the heavens and to serve Ba'al; and they continued to make their sons and their
daughters pass through the fire and to practice divination and to look for omens, and they kept
selling themselves to do what was bad in the eyes of Jehovah, to offend him;

And they kept leaving all the commandments of Jehovah their God and proceeded to make for
themselves molten statues, two calves, and to make a sacred pole, and they began to bow down to
all the army of the heavens and to serve Ba'al;  and they continued to make their sons and their
daughters pass through the fire and to practice divination and to look for omens, and they kept
selling themselves to do what was bad in the eyes of Jehovah, to offend him;

184.    Defendants' duty to enforce my right to the free exercise of my religion includes

my right to dissemination parallels between Israel's ancient adopt of the worship of Molech and

the Baals to Babylonian Talmud-based Jewish religion's present-day acceptance of the doctrine

that allows sex with children and the sacrifice of children:

> Babylonian Talmud, Tractate Kethuboth, Folio 11b
> https://www.sefaria.org/Ketubot.11b.6?lang=bi&with=all&lang2=en
>
> אָמַר רָבָא, הָכִי קָאֲמַר: גָּדוֹל הַבָּא עַל הַקְּטַנָּה — וְלֹא כְּלוּם, דְּפָחוֹת מִכָּאן כְּנוֹתֵן אֶצְבַּע בָּעַיִן דָּמֵי. וְקָטָן הַבָּא עַל הַגְּדוֹלָה — עֲשָׂאָהּ מוּכַּת עֵץ. ומוּכַּת עֵץ גּוּפָא פְּלוּגְתָּא דְּרַבִּי מֵאִיר וְרַבָּנַן.
>
> Rava said that this is what the Mishna is saying: An adult man who engaged in intercourse with a minor girl less than three years old has done nothing, as intercourse with a girl less than three years old is tantamount to poking a finger into the eye. In the case of an eye, after a tear falls from it another tear forms to replace it. Similarly, the ruptured hymen of the girl younger than three is restored.
>
> Come and Hear: New America, Sex with Children by Talmud Rules
> http://www.come-and-hear.com/editor/america_2.html
>
> Again, there is no prohibition of a sexual practice that would almost certainly cause physical damage to a young girl due to the mismatched sizes of genitals between an adult's penis and a child's vagina or anus.
>
> We have seen in Numbers 31:12-18 that Moses permitted grown men to use little girls as concubines. In the Talmud, grown men are permitted to have sexual intercourse with female babies and children, and homosexual relations with boys younger than nine.
>
> Those "good old fashioned Torah values" are not quite as Christian America remembers them
> Babylonian Talmud, Tractate Sanhedrin, Folio 64a
> https://www.sefaria.org/Sanhedrin.64a.17?lang=bi&with=all&lang2=en
>
> מַתְנִי׳ הַנּוֹתֵן מִזַּרְעוֹ לַמּוֹלֶךְ, אֵינוֹ חַיָּיב עַד שֶׁיִּמְסוֹר לַמּוֹלֶךְ וְיַעֲבִיר בָּאֵשׁ. מָסַר לַמּוֹלֶךְ וְלֹא הֶעֱבִיר בָּאֵשׁ, הֶעֱבִיר בָּאֵשׁ וְלֹא מָסַר לַמּוֹלֶךְ – אֵינוֹ חַיָּיב עַד שֶׁיִּמְסוֹר לַמּוֹלֶךְ וְיַעֲבִיר בָּאֵשׁ.
>
> MISHNA: One who gives of his offspring to Molekh, for which one is executed by stoning, is not liable unless he hands over his child to the priests of Molekh and passes the child through the fire. If he handed over the child to the priests of Molekh but did not pass him through the fire, or if he passed him through the fire but did not hand him over to the priests of Molekh, he is not liable, unless he hands the child over to the priests of Molekh and passes him through the fire.
>
> .

Isr J Psychiatry Relat Sci - Vol. 49 - No 4 (2012)

# History of Abuse and Organic Difficulties in a Convenience Sample of 46 Ultra-orthodox Males with Pedophilia

Eliezer Witztum, MD,[1] Netzer Daie, MA,[2] Ayala Daie-Gabai, PhD,[3] and Ariel Rosler, MD[4]

[1] Mental Health Center, Faculty of Health Sciences, Ben-Gurion University of the Negev, Beer-Sheva, Israel
[2] Senior Clinical Psychologist, Private Practice, Mevaseret Zion, Israel
[3] The Jerusalem Center for Mental Health, Mental-Health Clinic, Maale Adumim, Israel
[4] Hadassah Hebrew University Medical Center, Former Head of the Division of Endocrinology at Mount Scopus Hadassah Hospital, Jerusalem, Israel

## ABSTRACT

**Background:** Evidence has started to accumulate that relates pedophilia to a history of being a victim of sexual abuse as well as to comorbidity with organic vulnerabilities. During a naturalistic study regarding treatment of pedophilia, the authors had access to clinical and psychodiagnostic evaluations of Israeli Jewish ultra-orthodox male pedophiles outside the forensic system. Using psychiatric examination as well as a battery of psychological tests, presence of history of trauma as well as comorbidity with organic vulnerabilities among this unique sub-group was examined.

**Method:** This survey was part of a larger scale research on the effectiveness of Decapeptyl injections as treatment for pedophilia. All participants in the original research underwent comprehensive psychological assessment including an extensive clinical interview as well as psychological tests (Bender, Rorschach and TAT). Of the patients participating in the research, this survey focused on the group of 46 ultra-orthodox male pedophiles. Cross-tabs analyses were conducted in order to examine prevalence of history of trauma and organic vulnerabilities in this specific group.

**Results:** Based on self reports combined with corroborating reports (obtained from parents, educators and medical staff), together with indications in psychological tests, we found that 82.6% of participants were victims of sexual trauma as children and 87% suffer from some kind of organic vulnerability (learning disabilities, disinhibitions, etc.).

**Limitations:** Limitations of this small convenience sample that influence ability to generalize are discussed.

**Conclusions:** The current survey indicates that in this sample, the ultra-orthodox male pedophile was frequently a victim of childhood sexual trauma, and exhibited indications of organic vulnerabilities. This is more pronounced than findings in previous studies, and calls for further research in order to understand the underlying causes.

This survey was part of a study that was approved by an Institutional Ethics Committee of the Ezrat Nashim Hospital in Jerusalem, and written informed consent was obtained from all patients.

Sexual abuse in the ultra-orthodox community is a serious and under-researched phenomenon. This community tends to keep such instances secret and often forensic systems are not even aware of them. In particular, the clinical risk factors that lead individuals in this community to engage in pedophilic behavior are poorly understood. The aim of this paper was to portray clinical characteristics of a convenient sample of ultra-orthodox males who meet criteria for pedophilia.

Address for Correspondence: Professor Eliezer Witztum, 4 Revadim St., Jerusalem 93391, Israel email elyit@actcom.co.il



**✪ HAARETZ** January 08, 2020.
Tevet 11, 5780

Log in    Subscribe now

Israel News  All

Iran missile strike   U.S. - Iran war   Soleimani   Armis   Lev and Igor   Erdogan   'Dracula' - N

Trump exploited Soleimani's mistake, and Netanyahu gains the most

The Jewish left's tragi

**Trending Now**

Home

# Save the Children (2 of 2)

04.03.2004 00:00 **Updated:** 2:08 PM

Share   Tweet   ✉   ♫      💬 0   ⓘ Zen   Subscribe

In 1993, Ressler and Witztum turned to the Swedish and Danish
drug company Ferring through the Israeli importer Lapidot, and the
company gave permission and funding to carry out a clinical trial on
30 people. At the same time, they received permission from the
Helsinki Committee. In 1998, an article was published in the New
England Journal of Medicine about the new use of the injection, and
since then, says Ressler, there has been a worldwide revolution.
Today, many countries have followed in the footsteps of the Israeli
researchers, and have introduced this new use for the drug. A year
and a half ago, the treatment received approval from Israel's
Ministry of Health. Decapeptyl has been on the Israeli market since
1978, and is included in the health basket for all uses, except for
pedophiles. They may buy it in private pharmacies for NIS 800 per
month. The drug costs the Ministry of Health NIS 260.

**Treatment**

In recent years, an innovative treatment for pedophiles, using
Decapeptyl, has been introduced into Israel's health care system.
This is an injection containing a substance called Triptorelin, which
lowers the level of testosterone to zero, and is widely used in the
treatment of prostate cancer, for IVF, and in certain birth control
pills. Birger: "The injection suppresses the sexual urge, and it has
relatively fewer side effects than other drugs. We recently received
approval from the Prison Service to treat five men. Even that is done
willingly and with consent."

Subscribe to Haaretz.com to really understand the Middle East
**$1 FOR THE FIRST MONTH**    SU

70

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**HAARETZ**    April 18, 2019.
Nisan 13, 5779    Search

Israel News | All

Saudi Arabia | Netanyahu 2020 | Palestinian homes | Jewish-Arab NGO | 'Mayor Pete' | Passo

Netanyahu deserves to win the election. And we Israelis deserve him

Meet the real King Da

**Trending Now**

Netanyahu, Trump, annexation
Special project >

Home > Opinion

# A Nation of Pedophiles

Both groups are pedophiles: those who wish to cover young girls up in the name of God; and those who expose girls before viewers in the name of profit.

**Kobi Niv** | ⊝ Send me email alerts

May 26, 2013 4:34 AM

2    Tweet  ✉  ♫        💬 3  ⓘ Zen    Subscribe

• **Israel Police nab 17 pedophiles in countrywide sweep**

Now and then, the demon of pedophilia - that dark sexual taboo - rears its ugly head. This time it was because someone said something like "7-year-old girls do it for me." Immediately, the knives were out and calls were made to behead the pedophile. An impassioned discussion over his identity started, until it reached the point where one wonders whether it is even possible to discuss the issue at all. Only one matter isn't up for discussion: The question of whether we as a society - not just a few individuals here and there, be they real or imagined - suffer from pedophilia. And the answer is yes. Frighteningly so.



Can This Number Be Credible? Jewish Anti-Abuse Activists Say Half of Hasidic Boys Are Raped By Elders November 13, 2013 Terry Firma



Patheos Friendly Atheist. ... Want more from the Friendly Atheist? Get our FREE Newsletters and special offers!

## Can This Number Be Credible? Jewish Anti-Abuse Activists Say Half of Hasidic Boys Are Raped By Elders

By Terry Firma
November 13, 2013
0Shares

Back in July, I wrote:

> In the world of Judaism alone, news reports of child abuse are so numerous that the admirably tenacious and prolific writer **Shmarya Rosenberg**, who runs the Failed Messiah blog, has a hard time keeping up.

There's actually another Rosenberg who has made it his laser-focused mission to expose this evil — and who's suffered the consequences. *Vice* has an interview with **Nuchem Rosenberg**, a rabbi who throws out an eye-popping guesstimate:



Nuchem Rosenberg (Paul Martinka — via New York Post)

The alleged abusers are schoolteachers, rabbis, fathers, uncles — figures of male authority. The victims, like those of Catholic priests, are mostly boys. Rabbi Rosenberg believes **around half of young males in Brooklyn's Hasidic community** — the largest in the United States and one of the largest in the world — **have been victims of sexual assault perpetrated by their elders**. Ben Hirsch, director of Survivors for Justice, a Brooklyn organization that advocates for Orthodox sex abuse victims, thinks the real number is **higher**. "From anecdotal evidence, we're looking at **over 50 percent**."

I had to read that twice. The number surely exceeds even the bleakest calculations of how widespread this crime is. In the absence of factual stats — impossible to come by — it's hard to know what to make of it all. Take a walk through Brooklyn's conservative-Jewish neighborhoods. Do you believe that every second orthodox boy you see is a victim of sexual assault? Can the iceberg be that huge?

Nuchem Rosenberg and Ben Hirsch have presumably studied the issue longer and more carefully than any of us here, and should be given a modicum of authority on the subject. On the other hand, due to possible factors like confirmation bias and/or an activist's zeal, it could be that they're wolf-criers — that they see abuse everywhere, even where none occurred.

With that caveat, here's what Rosenberg found, and how he became perhaps the most hated man in Brooklyn.

> On a visit to Jerusalem in 2005, Rabbi Rosenberg entered into a mikvah [sacred ritual bath] in one of the holiest neighborhoods in the city, Mea She'arim. "I opened a door that entered into a schvitz," he told me. "Vapors everywhere, I can barely see. My eyes adjust, and I see an old man, my age, long white beard, a holy-looking man, sitting in the vapors. **On his lap, facing away from him, is a boy, maybe seven years old. And the old man is having anal sex with this boy**." …

> "This boy was speared on the man like an animal, like a pig, and the boy was saying nothing. But on his face — fear. The old man [looked at me] *without* any fear, **as if this was common practice. He didn't stop**. I was so angry, I confronted him. He removed the boy from his penis, and I took the boy aside. I told this man, 'It's a sin before God, a *mishkovzucher*. What are you doing to this boy's soul? You're destroying this boy!' He had a sponge on a stick to clean his back, and he hit me across the face with it. **'How dare you interrupt me!'** he said."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



185.    Defendants, all of whom are officers of the court failed in their duty to enforce

my right to freedom of speech in, *of all places,* courthouses where the defendants used the

enforcement of the Law of Moser as an act of antisemitism to prevent me from disseminating

information regarding the sexual assault of my son in Jew-controlled foster care agencies in

the same manner that the rape of foster boys by government official during the event

23
24
25
26
27
28

historically known as the Franklin Scandal, including the rape of victim Paul Bonacci, who

was a victim of the sex trafficking of foster children that was financed by (Ashkenazi) Jewish

billion Alan Baer. The defendants, at the behest of Jewish leadership, continue to enforce the

Babylonian Talmudic *Law of Moser* which continues to prohibit me from exposing Jewish

leadership's involvement in the sex trafficking of children in New York City's foster care

system. *See* transcript of the hearing in the case Bonacci v. King attached as **Exhibit 60**.

---

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

99 FEB 22  AM 8: 14

GARY D. McFARLAND
CLERK

PAUL A. BONACCI,                    )       4:CV91-3037
            Plaintiff,              )
                                    )
vs.                                 )       MEMORANDUM OF DECISION
                                    )
LAWRENCE E. KING,                   )
            Defendant.              )

On February 27, 1998, I found that default judgment should be entered against the
defendant Lawrence E. King in favor of the plaintiff, Paul A. Bonacci.   A trial on the issue of the
damages due the plaintiff by that defendant was had on February 5, 1999.

Two counts are alleged against the defendant King in the complaint.  Count V alleges a
conspiracy with public officers to deprive the plaintiff of his civil rights, designed to continue to
subject the plaintiff to emotional abuse and to prevent him from informing authorities of criminal
conduct.  Count VIII charges battery, false imprisonment, infliction of emotional distress,
negligence and conspiracy to deprive the plaintiff of civil rights.   Between December 1980 and
1988, the complaint alleges, the defendant King continually subjected the plaintiff to repeated
sexual assaults, false imprisonments, infliction of emotional distress, organized and
directed satanic rituals, forced the plaintiff to "scavenge" for children to be a part of the
defendant King's sexual abuse and pornography ring, forced the plaintiff to engage in numerous
sexual contacts with the defendant King and others and participate in deviate sexual games and
masochistic orgies with other minor children.   The defendant King's default has made those
allegations true as to him.   The issue now is the relief to be granted monetarily.

The now uncontradicted evidence is that the plaintiff has suffered much.   He has
suffered burns, broken fingers, beatings of the head and face and other indignities by the
wrongful actions of the defendant King.  In addition to the misery of going through the
experiences just related over a period of eight years, the plaintiff has suffered the lingering
results to the present time.  He is a victim of multiple personality disorder, involving as many as
fourteen distinct personalities aside from his primary personality.   He has given up a desired
military career and received threats on his life.  He suffers from sleeplessness, has bad dreams,
has difficulty in holding a job, is fearful that others are following him, fears getting killed, has
depressing flashbacks, and is verbally violent on occasion, all in connection with the multiple
personality disorder and caused by the wrongful activities of the defendant King.

Almost certainly the defendant King has little remaining financial resources, but a fair
judgment to compensate the plaintiff is necessary.   For the sixteen years since the abuse of the
plaintiff began I conclude that a fair compensation for the damages he has suffered is $800,000.
A punitive award is also justified, but the amount needs to be limited because of the small effect

that such a judgment would have on the defendant King, given his financial condition and his
presence now in prison.   I deem a punitive award of $200,000 to be adequate.

Dated February 19, 1999.

BY THE COURT

_[signature]_

United States Senior District Judge

74

/29/2021                                                    David Walker | Facebook

Perhaps it's all my fault. Beaten and abused so often in foster care, I even now instinctively "flinch" whenever anyone motions towards my face...... threatened with a butcher knife by a teenage boy when I was 9 years old "IN FOSTER CARE", among many other "things" that happened to me, So very sorry for the mistakes that others made with me, at least I tried to "pretend" to be normal, apparently too little too late.

I tried to be willing, push myself beyond my bounds, tried to be kind..... Tried to march forward despite poverty, pain, abuse, a horrific past and a damaged mind, tried to move forward and leave the past behind.

Strived to be more than what my life prepared me for, any other human being certainly would've gone insane..... So many years fighting an uphill battle, apparently my efforts a total waste of time and fruitlessly in vain.

Undone by abuse from my past and now the present, perhaps my "REAL" nightmare has just begun..... Nothing to show for years of relentless effort and everything else I tried to do, I can't believe it's amounted to "this", oh my God, the "Stupid people" have won. Oh my God.... The "Stupid people" have won.

186.    President Trump's failure to enforce my constitutional rights based on Executive Order 13899's and Executive Order 14188's politicization of the religious tort of antisemitism and its extension, Law of Moser, which treats the filing of civil and criminal complaints against Jews as an act of antisemitism constitutes the commission of the following criminal offenses: (a) 18 U.S.C. § 2, aiding and abetting; (b) 18 U.S.C. § 2384, seditious conspiracy; (c) 18 U.S.C. § 1512 and (d) various RICO-predicate crimes that include, but are not limited to 18 U.S.C. § 1503, obstruction of justice and 18 U.S.C. § 1512, tampering with a witness, victim or informant. The subject criminal offenses are crimes that are still being committed by the defendants that have deprived me of my constitutional rights that, while appearing to enforced under the color of federal law, are in actuality, enforced based on the enforcement of the religious tort of antisemitism, and its extension, Law of Moser, in violation of my constitutional right to make privileged statements during judicial proceedings relating to their interference with my Fifth Amendment right to due process by way

of authorizing a subpoena to acquire Defendant Uzamere's records based on his violation of immigration law, and my Seventh Amendment right to a jury trial to prevent me from filing further complaints against Jewish immigration attorney Allen E. Kaye (deceased) and Harvey Shapiro based on the enforcement of the Babylonian Talmud doctrine, Law of Moser, considered by Jewish leadership to be an act of antisemitism.

### AS AND FOR A THIRD CAUSE OF ACTION
### ABROGATION OF THE EQUAL PROTECTION CLAUSE

**Violation of 18 U.S.C. § 242, Deprivation of Rights Under Color of Law as Applied through the Fourteenth Amendment's Privileges/Immunity Clause (*ultra vires*)**

187.    I restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

188.    The Fourteenth Amendment's Privileges/Immunity Clause holds that:

> *No State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws (emphasis added).

189.    Defendants owed me a duty to enforce the mandate in the U.S. Supreme Court case *Eisenstadt v. Baird,* 405 U.S. 438 (1972), a landmark decision in which the U.S. Supreme Court established the right of unmarried people to possess contraception on the same basis as married couples. The Court's opinion held that providing dissimilar treatment for persons who are similarly situated, the statute violates the Equal Protection Clause of the Fourteenth Amendment. Pp. 405 U. S. 446-455.

190.    The Babylonian Talmud is replete with dogma that espouses Jews' right to mistreat non-Jews, and the disseminate the mistreatment of non-Jews as religious dogma:

You Shall Not Hate/You Shall Love Your Neighbor as Yourself
http://www.come-and-hear.com/supplement/so-daat-emet/en_gentiles4.html#f3

It is written in the Torah (Leviticus 19:17): "You shall not hate your brother in your heart. You shall certainly rebuke your neighbor and not suffer sin on his account" -- so it is clearly stated in the Torah that this prohibition specifically regards Jews. And so Maimonides wrote in The Laws of Mental States, chapter 6, halacha 6 (in the printed edition, halacha 5): "Anyone who hates a Jew in his heart transgresses a negative commandment, as it says: 'You shall not hate your brother in your heart'."

It is written in the Torah (Leviticus 19:18): "You shall not avenge, nor bear any grudge against the children of your people, but you shall love your neighbor as yourself: I am the Lord" -- here also the verse yells out "the children of your people." In Torat Cohanim on the portion of Kedoshim, chapter 4, halacha 12: "You shall not avenge nor bear a grudge against the children of your people -- but you can avenge and bear a grudge against others" (that is, against Gentiles -- explanation of the Ra'avad).

In chapter 6 of The Laws of Mental States, halacha 4 (in the printed edition, halacha 3): "It is a commandment for every person to love each and every Jew as he loves himself, as it says: 'You shall love your neighbor as yourself'."

Babylonian Talmud, Tractate Baba Kamma, Folio 113a
https://www.sefaria.org/Bava_Kamma.113a.21?lang=bi&with=all&lang2=en

רַב אַשִׁי אָמַר: בְּמוֹכֵס גּוֹי. דְּתַנְיָא: יִשְׂרָאֵל וְגוֹי שֶׁבָּאוּ לַדִּין, אִם אַתָּה יָכוֹל לְזַכּוֹתוֹ בְּדִינֵי יִשְׂרָאֵל — זַכֵּהוּ, וֶאֱמוֹר לוֹ: כָּךְ דִּינֵנוּ. בְּדִינֵי גּוֹיִם — זַכֵּהוּ וֶאֱמוֹר לוֹ: כָּךְ דִּינֶכֶם. וְאִם לָאו, בָּאִין עָלָיו בַּעֲקִיפִין, דִּבְרֵי רַבִּי יִשְׁמָעֵאל. רַבִּי עֲקִיבָא אוֹמֵר: אֵין בָּאִין עָלָיו בַּעֲקִיפִין, מִפְּנֵי קִידּוּשׁ הַשֵּׁם.

Rav Ashi said: The mishna issues its ruling with regard to a gentile customs collector, whom one may deceive, as it is taught in a baraita: In the case of a Jew and a gentile who approach the court for judgment in a legal dispute, if you can vindicate the Jew under Jewish law, vindicate him, and say to the gentile: This is our law. If he can be vindicated under gentile law, vindicate him, and say to the gentile: This is your law. And if it is not possible to vindicate him under either system of law, one approaches the case circuitously, seeking a justification to vindicate the Jew.

Babylonian Talmud, Tractate Sanhedrin, Folio 57a
https://www.sefaria.org/Sanhedrin.57a.14?lang=bi&with=all&lang2=en

הַגַּזֵּל בֶּן נֹחַ נֶהֱרַג? וְהָתַנְיָא: עַל הַגַּזֵּל, גָּנַב וְגָזַל, וְכֵן יְפַת תּוֹאַר, וְכֵן כַּיּוֹצֵא בָּהֶן — גּוֹי בְּגוֹי וְגוֹי בְּיִשְׂרָאֵל אָסוּר, וְיִשְׂרָאֵל בְּגוֹי מוּתָּר. וְאִם אִיתָא, נִיתְנֵי ״חַיָּיב״!

The Gemara asks: But is a descendant of Noah executed for robbery? But isn't it taught in a baraita: With regard to the following types of robbery: One who steals or robs, and likewise one who engages in intercourse with a married beautiful woman who was taken as a prisoner of war, and likewise all actions similar to these, if they are done by a gentile to another gentile, or by a gentile to a Jew, the action is prohibited; but if a Jew does so to a gentile, it is permitted?

וְהָא כׇּל הֵיכָא דְּאִית לֵיהּ חִיּוּבָא מִיתְנָא קָתָנֵי, דִּקְתָנֵי רֵישָׁא: עַל שְׁפִיכוּת דָּמִים — גּוֹי בְּגוֹי וְגוֹי בְּיִשְׂרָאֵל חַיָּיב, יִשְׂרָאֵל בְּגוֹי פָּטוּר.

The Gemara challenges: But wherever there is liability for capital punishment, this tanna teaches it; as it is taught in the first clause: With regard to bloodshed, if a gentile murders another gentile, or a

gentile murders a Jew, he is liable. If a Jew murders a gentile, he is exempt. Evidently, the term liable is used in the baraita.

190.    Defendants failed in their duty to provide legal services in a manner that enforces my right to equal protection of the law, and is free from unlawful bias. Defendant Cowles and Defendant McCarthy commenced the seditious conspiracy to enforce Babylonian Talmudic law that treats reporting the crimes committed by Jews as an act of antisemitism by failing to provide federal prosecutorial services free from unlawful bias. Instead, Defendant Cowles abridged my right to due process and equal protection under the law by aiding and abetting Defendant McCarthy's filing of a false criminal charge to enforce the Babylonian Talmudic doctrine Law of Moser that prohibits individuals from reporting the wrongdoings of Jews to the secular authorities. She did this to prevent me from reprting Jewish immigration attorney Allen E. Kaye for acting as a principal to defendant Ehigie Edobor Uzamere's violation of 8 U.S.C. § 1325(c), illegal entry by alien, and 18 U.S.C.  § 1546, fraud and misuse of visas, permits, and other documents. By the time that Judge Murtha dimissed Defendant Cowles' maliciously filed criminal case, Defendant Cowles had already begun violating 18 U.S.C. § 2261A, stalking me by monitoring my attempts to file complaints relating to: (a) her malicious prosecution in the case *United States of America v. Cheryl Uzamere*, Docket No. 1:08-cr-00114-jgm; and (b) any other complaint in which I introduced documents that exposed her malicious prosecution.

191.    The remaining defendants became participants of the seditious conspiracy to enforce Babylonian Talmudic law that treats reporting the crimes committed by Jewish immigration attorneys Allen E. Kaye an act of antisemitism by preventing the authorization of a subpoena to the U.S. Citizenship and Immigration Service that would have allowed me to prove that: (1) Defendant Uzamere is my husband; (2), that Defendant Uzamere is the father of

our daughter Tara; (3) to enforce 18 NYCRR § 351.2(e)(1)(2) of the immigration records of Ehigie Edobor Uzamere; and (4) that Jewish attorneys Allen E. Kaye and Harvey Shapiro were principals in Defendant Uzamere's commission of immigration fraud and identity fraud.

192.    President Trump's failure to enforce my constitutional rights based on Executive Order 13899's and Executive Order 14188's politicization of the religious tort of antisemitism and its extension, Law of Moser, which treats the filing of civil and criminal complaints against Jews as an act of antisemitism constitutes the commission of the following criminal offenses: (a) 18 U.S.C. § 2, aiding and abetting; (b) 18 U.S.C. § 2384, seditious conspiracy; (c) 18 U.S.C. § 1512 and (d) various RICO-predicate crimes that include, but are not limited to 18 U.S.C. § 1503, obstruction of justice and 18 U.S.C. § 1512, tampering with a witness, victim or informant. The subject criminal offenses are crimes that are still being committed by the defendants that have deprived me of my constitutional rights that, while appearing to enforced under the color of federal law, are in actuality, enforced based on the enforcement of the religious tort of antisemitism, and its extension, Law of Moser, in violation of my constitutional right.

193.    President Trump's failure to enforce my constitutional rights based on Executive Order 13899's and Executive Order 14188's politicization of the religious tort of antisemitism and its extension, Law of Moser, which treats the filing of civil and criminal complaints against Jews as an act of antisemitism constitutes the commission of (a) 18 U.S.C. § 2, aiding and abetting regarding Defendant New York State's violation of immigration laws; and (b) 18 U.S.C. § 1503, obstruction of justice pertaining to defendant Pamela Jo Bondi's filing of the case *The United States of America v. State of New York, Kathleen Hochul, Governor of New York, in Her Official Capacity, Letitia A. James, in Her Official*

*Capacity; Mark J.F. Schroeder, Commissioner of the New York State Department of Motor Vehicles in His Official Capacity,* Docket No. 1:25-cv-0205 (AMN/MJK) that addresses defendant New York States violation of the Supremacy Clause pertaining to the enforcement of immigration. I am now, not only a victim of immigration fraud, but I am a victim of both the New York State judiciary's and the federal judiciary's de facto enforcement of the prohibition against antisemitism which includes Law of Moser, the prohibition against reporting the crimes of Jews to the secular authority as an act of antisemitism.

194.    Executive Order 13899 and Executive Order 14188 are "wolves that come as wolves. Like the International Holocaust Remembrance Alliance, the Anti-Defamation League and the Southern Poverty Law Center, Executive Order 13899 and Executive Order 14188 are predatory, public media scam that engages in widespread deception to ensure that the general public never discovers that the Babylonian Talmudic definition of antisemitism requires the public's acceptance of illegal/immoral acts that the Babylonian Talmud allows Jews to do to non-Jews; and to place the cloak of "victimhood" not just on Israel and the Jewish community, but on lawbreaking Jews as well.

195.    I have an equitable cause of action to enjoin "unconstitutional actions" by federal officials. *Armstrong,* 757 U.S. at 327.

196.    The Court should therefore declare that the Order is *ultra vires,* and enjoin the continued promulgation of Executive Order 13899 and Executive Order 14188.

### PRAYER FOR RELIEF

195.    For these reasons, I respectfully request an order:

196.    Declaring that Executive Order 13899 and Eexxutive Order 14188 and all actions implementing it are unlawful and unconstitutional;

197.    Preliminarily and permanently enjoining the Defendants from implementing or seeking to enforce Executive Order 13899 and Eexutive Order 14188.

198.    Entering judgment in favor of Plaintiffs;

199.    Awarding Plaintiffs their reasonable costs and attorney's fees in accordance with law;

200.    A jury trial; and

201.    Issuing any other relief that the Court deems just and proper.

Dated: June 12, 2025                    Respectfully submitted,

Cheryl D. Uzamere
Sole Proprietor
African Diasporal Enterprises
Uzamere Word Processing & More
1209 Loring Avenue
Apt. 6B
Brooklyn, NY 11208
Tel.: (929) 225-8837
Fax: (929) 225-8827
Cell: (332) 345-0002
cuzamere@netzero.net
cheryl.uzamere@africandiasporalenterprises.net
cheryl.uzamere@uzamerewordprocessing.net

81